## HILL v. THOMAS.
### No. 3681.

Court of Civil Appeals of Texas. Beaumont.

May 23, 1940.

Rehearing Denied June 5, 1940.

Richard & A. P. Mays and Claude L. Milburn, all of Corsicana, for appellant.

Justice & Justice, Harry Boyd, W. R. Thomas, G. W. Allison, and Austin Loftis, all of Athens, for appellee.

WALKER, Chief Justice.

This was an action by appellee, Mrs. E. E. Thomas, a feme sole, against appellant, Ross B. Hill, to cancel a deed dated May 11, 1938, whereby she conveyed to appellant 160 acres of land in Henderson county, and to recover the title and possession of the land.

For cause of action, appellee alleged that about November 1, 1937, she met appellant at the home of her friend, Mrs. Iverson, in Corsicana; that soon after meeting her appellant began making love to her; that about December 25, 1937, he proposed marriage to her and she accepted; that she insisted he set a date for their marriage, which at first he refused to do, but about May 10, 1938, he promised that he would marry her on her birthday, on the 18th of June, 1938, "if she would make him a deed to her property at that time"; and she accepted his offer and on May 11, 1938, conveyed him the property in controversy "for the sole consideration" of his promise to marry her. We quote from the petition:

"That after the making, execution and delivery of said deed, they went along together as sweethearts and often discussed their approaching marriage; that prior to June 18th, she had made her wedding trousseau and all preparations for the coming wedding on June the 18th, and that on June the 18th, the defendant claimed that he was sick and they could not make the trip, as they had intended, to Dallas, Texas, where they were to be married, but that on June 20th that she and the said Ross B. Hill did go to Dallas in a car for the sole and only purpose of getting married; that when they reached Dallas, they drove to and by the court house, but that he never did stop to secure the license or to make any effort to secure the same; that when they returned from their trip to Dallas the plaintiff inquired of the defendant why he had not secured the license to marry her and why he had not married her; and he then told her he did not intend to marry her at all.

"The plaintiff says that the said Ross B. Hill, in order to secure the execution and delivery of said deed to himself, fraudulently represented to the plaintiff that he was in love with her, and fraudulently represented to her that he intended to marry her, and fraudulently agreed to marry her that he would marry her in consideration of the making, execution, and delivery of said deed to him; that this plaintiff believed said fraudulent representations so made to her, and relied thereon in the making, execution, and delivery of said deed to said defendant, and she would not have made said deed but for such promise on the part of the defendant, which was fraudulently made to her for the sole and only purpose of the making, execution and delivery of said (deed) to him.

"The plaintiff further says that after the defendant had told her that he did not intend to marry her, that she then demanded of him that he return to her said deed that she had given to him; but he refused to do so, and that after she had employed an attorney to bring suit for said property, that he then placed said deed of record in Henderson County, Texas, where the same is now of record in the deed records in Vol. 222, page 442, and it was placed of record on the ——— day of ——— A. D. 1938, and that said deed so of record cast a cloud upon this plaintiff's title to said land."

The prayer was for title and possession of the 160 acres of land, for writ of possession, rents, damages, and costs of suit, and that the deed made by her to appellant, which had been recorded in Vol. 222, page 442 of the deed records of Henderson county, be set aside and held for naught and removed as a cloud upon her title.

Appellant answered by general demurrer, special exception that appellee had plead

"inconsistent remedies," general denial, and not guilty.

On the verdict of the jury, answering special issues, judgment was rendered in favor of appellee, cancelling the deed she had executed to appellant, and awarding her title to her property, with writ of possession, from which appellant prosecuted his appeal to the Dallas Court of Civil Appeals. The case is on our docket by order of transfer by the Supreme Court.

■■■ We overrule appellant's proposition that the petition was subject to the general demurrer, on the ground that appellee failed to allege that, at the very time he made his promise to marry her on consideration that she convey him the land in controversy, he did not intend to keep his promise. Appellant announces a correct legal proposition that, where the cause of action is predicated upon the use of a promise to accomplish a fraudulent purpose, the complaining party must allege and prove that, at the time the party gave the promise, there was no intention on his part to perform it. Rapid Transit Railway Co. v. Smith, 98 Tex. 553, 86 S.W. 322; Chicago, T. & M. C. Railway Co. v. Titterington, 84 Tex. 218, 19 S.W. 472, 31 Am.St. Rep. 39; Touchstone v. Staggs, Tex.Civ. App., 39 S.W. 189; McFarland v. McGill, 16 Tex.Civ.App. 298, 41 S.W. 402; Chambers v. Wyatt, Tex.Civ.App., 151 S.W. 864; Beaumont Carriage Co. v. Price & Johnson, Tex.Civ.App., 104 S.W. 499. There was no affirmative allegation in appellee's petition that at the very time appellant promised to marry her, on condition that she convey to him her property, he did not intend to perform it. But as against the general demurrer—the point was not raised by special exception—the petition was entitled to all the intendments deducible from the facts alleged. She alleged that appellant made his promise fraudulently "for the sole and only purpose of the making, executing and delivery" of the deed by her to him. If his "sole purpose" —a fraudulent purpose—in making the promise was simply to secure the deed, then he had no intention, or purpose, at the time it was made to perform it. Also she alleged that the promise was made on May 10, 1938, to marry her on June 18, 1938, and that she executed and delivered the deed to him on May 11, 1938. In this connection, she alleged the trip to Dallas, which was to be her wedding trip, and that

appellant refused to marry her on the trip. She alleged facts showing that there was no impediment to the execution by appellee of his promise from the day he made it until the day it was broken, with many opportunities for its due execution. Indulging the reasonable intendments in support of the allegations of the petition, it was not subject to the general demurrer.

■■■ Having alleged that appellant made his promise to appellee in fraud and, at the time it was made, that he did not intend to keep it, appellee rested under the burden of sustaining her allegations by proof. Appellant's second point is that there was no proof in support of the issue that, at the time he made his promise to marry appellee, he did not intend to keep it. We give the substance of appellee's testimony on this issue. At the time appellant gave appellee his promise to marry her, on condition that she convey to him the property in controversy, she was a feeble old woman, 81 years old, confined to her bed a part of the time as the result of a stroke of paralysis; appellant was a vigorous man, in good health, about 59 years old. Appellee owned, at the time appellant made her the promise, the 160 acres of land in controversy and about $300 in money; appellant owned nothing except an old automobile, under mortgage—he got from appellee her land and all her money, had her pay off the mortgage on his automobile and, at the time he refused to marry her, had secured from her all her money except one cent. Appellee, a feeble old widow, had no one to advise her and protect her, owning the property listed above; appellant began making love to her from the time he first met her, hugging and kissing her many times during the courtship from the time he met her until he broke his promise to marry her. He often told her he loved her, petted her, sat by her bedside and stroked her hands when she was suffering pain. When she was not able to walk to her bed room he carried her in his arms and put her to bed. He caressed her and she caressed him when they entered a room together, and when he came up to her in the dining or sitting room or when she came up to him. He made her many promises to take care of her and to make life easy for her, and to bury her by the side of her last husband when she died. As stated above, this love-making on his part continued from the time he met her until

after he got the deed from her, and then until he had secured from her all her money.

Though he was present in court when the case was tried, sitting by the side of his attorneys—this statement was made on oral argument—he offered no testimony in his defense.

It would be a mockery of logic to hold that the testimony of appellee did not raise the issue that appellant's promise to marry her was fraudulently made for the sole purpose of securing her property, and with no intention, at the time the promise was made, to perform it. The judgment of the court clearly has support in the evidence.

On the facts of this case, it was not prejudicial error to refuse to define the term "fraudulent" as used in the issue submitting to the jury appellant's promise to marry appellee.

The judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.