**MOTORS INS. CORPORATION, Appellant,**

v.

**O. H. FREEMAN, Appellee.**

**No. 15308.**

Court of Civil Appeals of Texas. Dallas.

June 21, 1957.

Rehearing Denied July 26, 1957.

John D. Griggs, Dallas, for appellant.

Enoch G. Fletcher, Grand Saline, for appellee.

DIXON, Chief Justice.

This is an appeal from an order overruling a plea of privilege, whereby appellant sought to have a cause transferred for trial from Van Zandt County, Texas, to Dallas County, Texas.

Appellee O. H. Freeman, plaintiff in the trial court, was the owner of an automobile which was totally destroyed in a collision. Appellant Motors Insurance Corporation was the insurance carrier.

Appellee, in his brief on appeal, contends that his suit is a suit on the insurance contract, hence under Art. 1995, subd. 28, Vernon's Ann.Civ.St., venue properly lies in Van Zandt County, where he resides and where the automobile in question was situated.

We are unable to agree with appellee that his suit is a suit on the insurance contract. We must look to his petition, not to his controverting affidavit or his brief, to determine the nature of the action. Hammonds v. Hammonds, Tex.Civ.App., 278 S.W.2d 380, at page 382, reversed on other grounds, Sup., 285 S.W.2d 362; Austin v. Grissom-Robertson Stores, Tex. Civ.App., 32 S.W.2d 205, at page 206; 43-B Tex.Jur. 368; and when we do so we find that appellee filed a suit seeking reformation of a written settlement agreement between the parties, which settlement agreement was alleged to have been executed in Van Zandt County.

That such is the nature of appellee's cause of action is evident from the material parts of his petition, which we here quote: "II. On or about December 7, 1954 the defendant, its agents, servants and employees came to Ben Wheeler in Van Zandt County, Texas and contacted the plaintiff at said time and place for the purpose of effecting an agreed settlement for the damage done to said car. That at said time and place the agent, servant and employee of the defendant presented to the plaintiff an agreed settlement to sign. The plaintiff was advised that it would be necessary for him to sign this agreement in order that the plaintiff could get his money for the loss of said car. The agent, servant and employee of the defendant at said time and place told the plaitiff that if he would sign said agreement that the note against the car which was held by

GMAC would be paid off and that in addition to paying off the note the defendant Insurance Company would pay the plaintiff $500.00 for his equity in the car. III. That at the time of the signing of said agreement by the plaintiff no amount of loss was shown on the agreement. That later said agreement was filled in by the defendant, its agent, servant and employee to show that the plaintiff would settle the loss for $1,950.00 and that the loan company would be paid out of that. That said amount of $1,950.00 was not sufficient to pay of the loss and pay the plaintiff his $500.00 which he was to get. That said amount was actually only $15.94 more than the loan company held against the car. That under said agreement the plaintiff actually got $484.06 less than said adjuster promised him. IV. If plaintiff be mistaken in his allegations that said agreement did not contain a statement that he would take $1,950.00 for his loss, then he alleges in the alternative that at the time he signed said agreement in Van Zandt County, Texas he was advised that the amount shown on the loss would be sufficient to pay off the loss and pay him $500.00 and that in signing said statement he was led to believe that he would actually get the $500.00 to his part and that relying on said promise he did not check the amount, if any, that was shown to see if it showed enough to pay the loss and pay him $500.00. * * * Wherefore plaintiff prays that * * * he have judgment reforming the agreement signed by him to the extent that he may be allowed the amount promised him which was $500.00 less the $15.94 he has been paid. * * *"

· Appellant in its plea of privilege alleged that appellant had its principal office in Dallas, Dallas County, Texas at 820 North Harwood Street; that it did not maintain an agency or representative in Van Zandt County; that the nearest county in which appellant maintained an agency or representative is Dallas County, Texas; and that neither appellee's alleged cause of action nor any part thereof arose in Van Zandt County, Texas.

Appellant grounds its appeal on two alleged points of error: (1) Appellee failed to prove essential venue facts; and (2) appellee's original petition sought simply to reform a written contract and his controverting affidavit attempted to change his cause of action to one of fraud.

At the hearing only two witnesses testified. Appellee testified in his own behalf. An employee of appellant testified for appellant. Their testimony was conflicting in some respects. So it becomes necessary for us to determine whether there is sufficient evidence in the record to sustain the trial court's judgment overruling appellant's plea of privilege.

The only written settlement agreement shown in the record was introduced by appellant without objection. It is dated December 7, 1954 and is shown by the acknowledgment signed by the notary public and by the testimony of appellee himself to have been executed in Wood County, Texas, not in Van Zandt County, Texas as alleged by appellee in his petition. This instrument, signed by appellee in Wood County, expressly provides " * * * that the total loss or damage * * * for which claim is made * * * is cash $1,950.00 and from this amount I direct my balance with GMAC be paid with the remainder to me."

In his controverting affidavit appellee takes the position that his petition alleges a fraud committed in Van Zandt County, Texas, and that appellant is a corporation, so under Art. 1995, subds. 7 and 23, V.A.C.S., venue properly lies in Van Zandt County, Texas.

In connection with this contention by appellee we think it is appropriate to quote material parts of appellee's testimony as follows:

"Q. So your petition was wrong when it was filed—if they owe you any money, it

wasn't $500.00 was it, when you filed your petition you sued for $500.00? A. Yes.

"Q. And you admit that $225.00 has been paid to you? A. Yes, sir. * * *

"Q. Now a minute ago you testified that when you talked with the insurance adjuster for the Motors Insurance Corporation—do you remember his name? ·A. Irving.

"Q. Could it be Ivan Cunningham? A. Yes.

"Q. He told you that he could replace the car? A. Yes, sir.

"Q. And he did not replace the car? A. He said he was trying to find one and couldn't find one. * * *

"Q. That is your signature? A. Yes sir. * * *

"Q. Did you sign this thing over there at Mineola, Texas? A. I don't know whether that was the paper I signed or not.

"Q. Was there something else you signed over there? A. No, he said 'You will have to sign this to get your money' and we did and then left. * * *

"Q. You signed a paper and this could be it? A. It could be.

"Q. And this is your signature? A. Yes.

"Q. And this is dated December 7, 1954? A. Yes.

"Q. And that is approximately the date you were over there? A. I guess it was. * * *

"Q. You do see that there is a notary seal here under your signature, don't you? A. Yes. * * *

"Q. And then when you got into Wood County, the car couldn't be replaced? A. The car had been sold. * * *

"Q. And that is when you entered into the formal agreement and he talked about giving you the money? A. Yes. * * *

"Q. Previous to that you were trying to get a replacement? A. Yes.

"Q. And not until you got to Wood County did you think about having to be paid off? A. I wasn't thinking about it. That is when he told me he found a car and it was sold, and he couldn't find another car.

"Q. *When he couldn't find a car, that is when he started to talk about giving you the money?* A. *Yes.*

"Q. *That is the agreement you reached there?* A. *Yes.* * * *

"Q. Mr. Freeman, the first time Mr. Cunningham contacted you, did you all make any sort of agreement at that time? A. No, sir, only I proposed to take the car, have the car replaced and that wasn't done, not once.

"Q. *And the first time you ever made any sort of agreement was over in Wood County?* A. *Yes, sir.*" (Emphasis ours.)

 From appellee's pleadings and from his own testimony it is evident that appellee is not entitled under Art. 1995, subds. 7,- 23 or 28 to maintain his suit in Van Zandt County, Texas. As we have already pointed out, the suit filed by appellee was not, as appellee pled, a suit on the insurance contract, but was a suit on a written settlement agreement. The written settlement agreement was not, as appellee pled, executed in Van Zandt County, but was executed in Wood County, Texas. And any fraud in connection with appellee's execution of the written contract, if there was any fraud as asserted by appellee in his controverting affidavit, was not, as appellee claims, committed in Van Zandt County, Texas, but was committed in Wood County, Texas. The burden was on appellee to plead and prove his venue facts. University of Texas v. Booker, Tex.Civ.App., 282 S.W.2d 740, at page 743; Guinn v. County School Trustees, Tex.Civ.App., 261 S.W.2d 913, at page 916; Nemec v. Degelia, Tex. Civ.App., 285 S.W.2d 411, at page 412;

Continental Transfer & Storage Co. v. Gee, Tex.Civ.App., 285 S.W.2d 892, at page 893. He failed to discharge such burden. Appellant's first point is sustained.

■ Are the averments in appellee's petition sufficient, as appellee asserts in his controverting affidavit, to show a cause of action based on fraud? In paragraphs II and III of his petition appellee says in effect that when he signed the written settlement agreement the amount of the loss was not shown. Appellant's agent had promised that if appellee would sign the contract, the note against the car would be paid off and in addition appellee would be paid $500. This promise, says appellee, the agent failed to keep, for he later filled in the amount of the loss as $1,950, which was insufficient to pay off the mortgage against the car and also pay appellee $500. The petition does not allege that at the time he made the promise the agent did not intend to perform it.

The allegations in paragraphs II and III are insufficient to set up an action based on fraud. When fraud is based on a promise to do something in the future, it is necessary to allege and prove that the promise was false and was made with no intention of keeping it. Hill v. Thomas, Tex.Civ.App., 140 S.W.2d 875, at page 877; Smith v. Hampton, Tex.Civ.App., 42 S.W.2d 466, at page 469; 20–A Tex.Jur. 93, 184, 203.

In paragraph IV of his petition appellee says that if he is mistaken in his allegation that the written agreement did not contain a statement that he would take $1,950 for his loss, then alternatively he alleges that he was advised that the amount shown ($1,-950.00) would be sufficient to pay off the loan and pay him $500.00, and that he was led to believe that he would actually get $500.00; and relying on said promise, he did not check the amount shown, if any, to see if it showed enough to pay the loan and pay him $500.

These allegations, too, are insufficient to set up an action of fraud. In the first place

the alternative plea does not allege that appellant's agent was the person who "advised" appellee. In the second place he admits that he did not bother to check the amount shown, if any, before signing the contract. Appellee does not allege that appellant prevented him from checking or reading the contract before he signed it; or that he, appellee, did not have an opportunity to detect the error, or mistake, or fraud; or that he was prevented from making an investigation; or that the agent of appellant was in any better position than was appellee to know the amount necessary to pay off the mortgage and still leave $500 for appellee. (As it turned out, there was enough to pay appellee $225 of the $500 he claims is due him.) In fact appellee does not allege any facts which might excuse his failure to check the contract, or read it, before signing it to see whether the amount of the loss was written in, or whether the correct amount was written in. Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553, at page 556; Cammack v. Prather, Tex.Civ. App., 74 S.W. 354, at page 356; 20–A Tex.Jur. 99.

■ We think appellee's petition is insufficient for another reason. He sues for reformation of a contract, but fails to allege facts clearly showing whether appellee relies on fraud, or on accident, or on mistake, or on two or more of such grounds as a basis for the relief he asks. The burden was on him to so plead. Davis v. Davis, 141 Tex. 613, 175 S.W.2d 226; Ostron v. Jackson, Tex.Civ.App., 127 S.W.2d 987, at page 992; West American Ins. Co. v. First State Bank of Rio Vista, Tex.Civ. App., 213 S.W.2d 298, at page 302; 36 Tex. Jur. 773.

Appellant's second point on appeal is sustained.

The judgment of the trial court is reversed and the cause is remanded to the trial court for another hearing not inconsistent with our holdings herein.