O. P. MURPHY, d/b/a Murphy Tomato Company, Appellant,

v.

C. L. McLAUGHLIN, Appellee.

No. 14281.

Court of Civil Appeals of Texas.

Houston.

Jan. 16, 1964.

Rehearing Denied Feb. 6, 1964.

Allie L. Peyton, Edward R. Baird, Houston, for appellant.

Frederick W. Robinson, Houston, for appellee.

COLEMAN, Justice.

This is a suit in the nature of an action for an accounting growing out of a joint venture in the purchase and sale of tomatoes.

C. L. McLaughlin, plaintiff in the trial court, pursuant to the agreement between the parties, purchased 132,358 pounds of tomatoes from farmers in California and shipped them to O. P. Murphy, defendant. McLaughlin expended $11,682.80 of his own funds and $6,000.00 furnished by Murphy in making the purchases. The tomatoes were received by Murphy in apparent good condition. Certain other expense was incurred in shipping and processing the tomatoes. It was the agreement of the parties that the profit, if any, realized from the venture would be shared equally and that if the venture resulted in a loss, each party would be responsible for one-half of the loss.

Appellant was engaged in the business of processing tomatoes and selling them at wholesale. He had a plant equipped with a refrigerated room where the tomatoes were ripened at controlled temperatures. He had employees experienced in grading and packaging tomatoes, and machinery to assist them in this work.

After the tomatoes were delivered to appellant he placed them in their original containers in the ripening room together with other tomatoes which he had purchased or which had been consigned to him for sale. These tomatoes were examined periodically by appellant or his employees, and when it appeared that a box had reached a proper degree of ripeness, it would be processed. The tomatoes would be removed from the container and placed on a moving belt where they would be washed by water spray

before being graded. Appellant's employees would throw rotten tomatoes in a barrel for disposal. The suitably ripe tomatoes would be packaged for sale and the green ones would be placed in a container for further ripening.

Appellant testified that of the 132,358 pounds of tomatoes received only 48,630 pounds were sold and that of the remainder, 77,350 pounds were "dumped", that is, given to F. Burgs who regularly collected refuse and garbage for use as hog feed, and 6,378 pounds disintegrated during the washing process and were washed down the drain. F. Burgs died before the trial, but receipts bearing his signature were introduced into evidence by appellee. Appellant testified that he received $8,623.70 for the tomatoes he was able to sell. Appellant states in his brief that he paid $4,446.19 for freight and packing costs and since this statement is not denied, it can be accepted as true. Before the suit was filed appellant transferred to appellee an automobile, a boat, a tire and $25.00 in cash in a partial settlement of accounts. A check for $306.95 was given to appellee, but he refused to cash it.

Appellant contends that he was entitled to an instructed verdict because there was no evidence that any of the tomatoes disposed of, other than the 48,630 pounds sold, had any value, and because there was no evidence that the venture resulted in a profit.

■ It is undisputed that the parties were engaged in a joint venture, and, therefore, occupied a fiduciary relationship toward each other. Thompson v. Duncan, Tex. Com.App., 44 S.W.2d 904. The sales of the good tomatoes, and the disposition of the bad tomatoes, were made by appellant and the books and records were under the control of appellant. In answer to appellee's petition, appellant filed an answer containing an accounting. Appellee introduced evidence sufficient to challenge the accuracy of the account and to place in question the adequacy of the books and records maintained by appellant.

The case was tried to a jury and in answer to special issues submitted to it, the jury found that appellant failed to account for tomatoes, which he had received for the account of the joint venture, having a fair market value of $13,800.00. The trial court entered judgment based on the jury verdict. Appellant did not request the trial court to submit other or additional issues.

■■ The burden of proving the correctness of the account contained in his answer rested on appellant. Where issues of fact were raised by the evidence as to the accuracy of the amounts of the tomatoes disposed of as garbage by dumping, it was appellant's burden to secure jury findings sustaining his position. Thamert v. Carter, 72 Idaho 515, 245 P.2d 145; 1 Am.Jur.2d, Accounts and Accounting, § 62; 1 C.J.S. Accounting § 39.

■ Appellee introduced into evidence certain receipts, which appellant testified were receipts given to him for the unsalable tomatoes disposed of by him. The receipts were ambiguous and required parol explanation. Other evidence was introduced by reason of which the accuracy and trustworthiness of the documentary evidence become questionable. Under such circumstances appellee was not bound by the documentary evidence. Trice Production Co. v. Dutton Drilling Co., Tex.Civ.App., 333 S.W.2d 607, ref., n.r.e.

■■ Appellant admitted that he received the tomatoes in four loads, as follows: (1) January 12, 1958, 29,745 lbs.; (2) January 17, 1958, 41,778 lbs.; (3) January 18, 1958, 30,297 lbs.; (4) January 20, 1958, 30,538 lbs. He testified that tomatoes didn't stay around much longer than thirty days, and that he sold 48,630 pounds of the tomatoes in question during the month of January, 1958. The finding of the jury that appellant failed to "account for" certain tomatoes of a certain value, must be held to

include a finding that he sold tomatoes having that value, which he did not include in the account found in his answer, and that he did not pay appellee his share of the proceeds. The words "account for", as used in the issue, also include the meaning "pay for." Texas Real Estate Commission v. Bentley, Tex.Civ.App., 253 S.W.2d 325. Such finding is supported by the record in this case since under the evidence none of the tomatoes could reasonably have been in appellant's possession at the time the account was filed and there is no intimation that any of the tomatoes were disposed of other than by sale, being washed down the drain, or by "dumping." The volume of tomatoes reported as having been washed down the drain was small, and was shown to be an estimate. The reliability of this item, as well as of the volume reported as "dumped", depended on appellant's testimony that there was excessive rotting, which was a controverted issue of fact. While there is no direct evidence of unreported sales, inferences that additional tomatoes were sold might reasonably be drawn from the evidence.

There was ample evidence of the fair market value of tomatoes at the time these tomatoes were in appellant's possession. The evidence is sufficient to support the answers made by the jury to the issues submitted.

 Appellant's final point is that the judgment rendered in this cause cannot be supported on any theory of law. We find no merit in this point. While appellee did not specifically pray for an accounting, the case was tried on this theory and no point of error, or argument, has been urged in this Court complaining of the pleading.

The theory on which the judgment in this case was rendered is well stated in 1 Am. Jur. 2d, Accounts and Accounting, § 63, pp. 437–438, as follows: "Where an action for an accounting is brought in a court of general equitable jurisdiction, the court has a duty, upon finding that an accounting is proper, to conduct the accounting, to try all the issues, administer full relief to the parties, and grant a judgment for the balance found due * * *."

The trial court properly placed the burden on appellant of proving the accuracy of his accounting for the assets belonging to the joint venture.

The judgment of the trial court is affirmed.