**Bob E. RICE, Appellant,**

v.

**Adrian LAMBERT, Appellee.**

**No. 228.**

Court of Civil Appeals of Texas.

Corpus Christi.

Oct. 27, 1966.

288

Milton W. Walton, Corpus Christi, for appellant.

Wm. DeWitt Alsup, Corpus Christi, for appellee.

OPINION

NYE, Justice.

This is a suit in the nature of an action for an accounting growing out of a joint venture in the purchase of a single automobile. The plaintiff Bob E. Rice, sued the defendant Adrian Lambert, seeking recovery of the amount of his contribution to the joint venture by way of a debt and alternatively for damages for fraud, breach of contract and conversion arising out of the agreement between the plaintiff and defendant. The case was tried before the court without a jury, resulting in a judgment ordering the automobile in question to be sold, and after expenses and costs of such sale have been deducted, the balance to be divided equally between the plaintiff and the defendant. The plaintiff, being dissatisfied with the judgment, has perfected his appeal to this court.

The court filed findings of fact and conclusions of law in response to request by the plaintiff. The plaintiff admits on appeal that the court's findings are correct but disagrees with the court's conclusions of law, i.e. that there was no conversion, fraud or breach of contract by the defendant. Briefly, the facts as found by the court and those which are undisputed are as follows:

The defendant operated a used car lot across the street from plaintiff's service station. For some time prior to the transaction in question the defendant traded at plaintiff's service station and the parties became friendly. In the early part of December, 1962, the plaintiff approached the defendant regarding the possibility of investing some money in an automobile to be sold on defendant's lot. Defendant was desirous of obtaining more cars to be offered for sale and plaintiff wanted to invest some money in a used automobile that could be sold and a profit obtained. The plaintiff advanced $500.00 to the defendant by check with nothing written on it to indicate the nature of the advance. The oral agreement was to the effect that plaintiff was to advance $500.00 on the purchase of a "clean fast selling" used automobile to be purchased at wholesale price; and that out of various purchases made by the defendant, the plaintiff could select the car that he wanted his money invested in as part of the purchase price. The defendant was to advance the balance of the purchase price and after deducting the cost of transporation of the car from place of its purchase to Corpus Christi, the car was to be sold and the profits divided equally. The defendant purchased several automobiles, one of which was a 1957 Chevrolet, which he purchased in San Antonio for $750.00. It was this car that plaintiff chose as being the one for the joint venture.

Unknown to the plaintiff at the time he invested this money in the vehicle the defendant's business was operating at a financial loss. About one month later the defendant was forced to discontinue his business because of losses and as a result thereof, and without consulting plaintiff, the business was closed. It was undisputed that defendant offered the car for sale for approximately one month and no charges were made for overhead, cost of transportation, or getting the car in condition for sale.

Following the closing of defendant's used car lot, the parties had a dispute concerning the disposition of the automobile. There was no prior agreement with respect to the possibility that the joint venture would not be carried out. Plaintiff's version was that he offered to give the defendant $250.00 and take the automobile, but the defendant refused to do so because the car was mortgaged at the bank and he could not separate this car from other cars mortaged on a floor plan agreement. The defendant's version was that he offered the plaintiff the car for $250.00 cash, or, that he would pay the plaintiff $500.00 and he would take the car. Defendant stated plaintiff refused this offer and wanted the car for himself for the amount he had invested in it ($500.00). The testimony was that the defendant was

further indebted to the plaintiff for gasoline and other service items at plaintiff's service station. This contributed to the dispute between the parties. Irrespective of the exact nature of the dispute it is clear that a dissolution of the partnership venture ceased when defendant closed his business.

Thereafter, the defendant on advise of his attorney stored the automobile for some eight months or longer. Partly because of such storage the car deteriorated and was badly in need of repair in order to make it again ready for sale. The defendant expended some $560.00 for repairs to the automobile, including the costs for garage storage ($12.00 per month). The defendant subsequently opened his car lot at a different location, offered the car for sale, but never was able to sell the vehicle. No effort was made on the part of the defendant to sell the car, however, from January of 1963 until October of 1964.

The court found that defendant had possession of the vehicle at all times and that the possession of the car was never demanded of him by the plaintiff. During a portion of the time that the car was in the defendant's possession he used it for his own personal use. The defendant did not execute a note evidencing the advancement nor did plaintiff ever make a demand that he do so. Plaintiff had invested $500.00 in the vehicle, the defendant $810.00, which included the original $250.00 plus $560.00 expended for repairs and storage. Additional costs, for bringing the car from San Antonio and getting the car ready for sale in December of 1962, were not included in these expenses. The court found that the automobile was worth $1,000.00 in December, 1962, and $600.00 at the time of trial.

The court concluded that the parties had an oral agreement in the nature of a joint venture, the profits of which were to be shared equally; that plaintiff's $500.00 was not a loan but a contribution to the joint venture; that the defendant did not convert the automobile and the $500.00 to his own use and benefit; that there was no fraud on the part of the defendant; nor did he breach the oral agreement. The court concluded that while defendant invested more money in the vehicle in question than the plaintiff ($810.00 to $500.00), the parties should each have one half of the proceeds from the sale of the automobile inasmuch as some of the deterioration in value and some of the costs for repairs were due to defendant's storage of the vehicle. The defendant assigns no cross points to this appeal.

Appellant's points one through five complain in effect of the failure of the trial court to find that defendant had breached the contract. Points six through ten that the trial court erred in not determining that defendant converted the automobile and points eleven through thirteen that the trial court erred in not holding that the defendant was guilty of fraud.

It is plaintiff's theory that because the defendant failed to sell the car he breached the oral contract between the parties and should be subject to damages or in the alternative, that when the defendant closed his lot he converted the vehicle to his own use, thereby damaging the plaintiff in the amount of the lost profit that he could have made had the vehicle been sold as agreed upon, plus the return of his investment. Plaintiff's theory as to fraud is that the defendant was operating at a financial loss unknown to the plaintiff and that he failed to disclose this fact to him to his damage.

We will consider appellant's points in reverse order. The trial court was correct in concluding that there was no fraud perpetrated by the defendant on the plaintiff. The parties entered into the agreement in good faith. There was no evidence that the defendant intended to deceive the plaintiff. It was undisputed that the plaintiff approached the defendant at the outset with the joint venture proposition and that defendant made no representations regarding the status of his business at the time

they entered into the contract. See Higginbotham-Bartlett Co. v. Powell, Tex.Civ. App., 270 S.W. 193, err. dism.; Dyer v. Caldcleugh & Powers, 392 S.W.2d 523, Tex.Civ.App. (1965) ref. n. r. e.; Motors Ins. Corporation v. Freeman, Tex.Civ.App., 304 S.W.2d 580. Appellant's points eleven through thirteen are overruled.

■ The trial court was further correct in concluding that the defendant did not convert the automobile and $500.00 advanced by the plaintiff. The conversion has been defined as being the unauthorized assumption and exercise of the right of ownership over chattels belonging to another, to the exclusion of an owner's rights. 89 C.J.S. Trover & Conversion § 1, p. 531. To the same effect see Zerr v. Howell, 88 S.W.2d 116, Tex.Civ.App., n. r. e. The uncontroverted evidence was that the plaintiff voluntarily gave the defendant $500.00 to be invested in an automobile. The defendant purchased the car and gave plaintiff an interest in the car of his choice exactly as he represented he would. Plaintiff permitted the defendant to have the title in his name and possession of the car at all times. At no time did plaintiff ever make demand for possession of the vehicle. Defendant's possession was acquired lawfully. See Davidson v. Atmar, 243 S.W. 662, Tex.Civ.App. Appellant's points six through ten are overruled.

Plaintiff contends that in his agreement with the defendant the defendant agreed and was obligated to sell the vehicle in question; that his failure to sell the car constituted a breach of his contract; that he should have judgment for his $500.00 plus one half of the prospective profits; and that the trial court's conclusion of law that defendant did not breach the contract is incorrect. The evidence is that defendant remained in business for a month after the agreement was entered into, during which time the automobile was held for sale on defendant's lot. The defendant testified in answer to an interrogatory that he intended to sell the automobile at the highest obtainable price. The car was offered for sale at a second car lot but the fact remains that no sale was ever consummated. When the defendant was forced to close his lot, the parties were unable to agree upon a disposition of the vehicle in question. The dissolution of the partnership relationship occurred at this time.

■ In general, after dissolution, each partner has an equal right to possession of the firm assets, and has the right and *duty* to dispose of the assets for the purpose of liquidating the firm affairs. 68 C.J.S. Partnership § 363, p. 870. It then was incumbent upon both partners to dispose of the assets of the venture.

■ The defendant, therefore, not only had the duty to dispose of the vehicle, he had the contractual obligation to do so. This duty and obligation is not to be overshadowed, however, with the like duty of the plaintiff. Plaintiff also had a duty to dispose of the assets of the venture. He had the right to obtain possession of the automobile for the purpose of liquidating the firm affairs. At no time did he make a demand for possession. He did not file suit promptly, but waited nearly a year. No effort was made on his part for the appointment of a receiver for the protection of his assets. The defendant may have breached the contract and the trial court may have erred in concluding that the contract was not breached, however, the trial court nevertheless reached the correct result.

■ It has been observed that a joint venture is a species of partnership and the joint venture relationship is subject to dissolution and termination upon the same basis as a conventional partnership. Booth v. Wilson, 339 S.W.2d 388, Tex.Civ.App (1960), ref. n. r. e. It is the general rule that when dealing with partnership or joint venture agreements, the remedy of the complaining party or his co-venturer is in equity for an accounting and settlement of the partnership affairs. Thompson v. Duncan,

**292**

44 S.W.2d 904, Tex.Com.App. (1932). Since a joint venture relationship is in the nature of a partnership, losses must be shared as well as profits, 33 Tex.Jur.2d, § 2, p. 288.

In accounting, the court found, and it was undisputed that the plaintiff invested $500.00 and the defendant $250.00 originally. Thereafter, the defendant spent $560.00. This would amount to $310.00 more money that defendant had in the vehicle than the plaintiff. In addition to this, the defendant paid out the cost of transporting the vehicle from San Antonio to Corpus Christi and paid the overhead expense that would have been attributable to the vehicle during the time it was offered for sale. The court made no findings as to how much this would amount to. The trial court granted judgment giving the plaintiff and defendant each a fifty percent ownership in the net proceeds of the sale of the vehicle.

It is evident that there was a balancing of the equities by the court exercising its equitable powers. The depreciation due to the lengthy storage and the costly repairs due to deterioration caused in some degree by defendant's failure to sell the vehicle, were charged for the most part against the defendant.

Where a dissolution of the partnership has occurred, the final decree should provide for a final adjustment of all the uncontroverted questions before the court with respect to the partnership accounting and distribution. 68 C.J.S. Partnership § 445, p. 998. Plaintiff plead that defendant had not accounted for the automobile and prayed for equitable relief. While neither party specifically prayed for an accounting, the case was tried on this theory and no point of error has been urged in this court complaining of the pleading. This was the holding of the court in the joint venture case of Murphy v. McLaughlin, 374 S.W.2d 754, Tex.Civ.App. (1964), ref. n. r. e. The Court went on to say:

"The theory on which the judgment in this case was rendered is well stated in 1 Am.Jur.2d Accounts and Accounting, § 63, pp. 437–438, as follows:

'Where an action for an accounting is brought in a court of general equitable jurisdiction the court has a duty, upon finding that an accounting is proper, to conduct the accounting, to try all the issues, administer full relief to the parties, and grant a judgment for the balance found due \* \* \*.' "

No attack has been made on the trial court's findings as to the accuracies of the accounting of the assets, or as to the money spent. Under the facts of this case, we hold the trial court administered full relief to the parties.

Finding no reversible error, the judgment of the trial court is affirmed.