CRUTCHER–ROLFS–CUMMINGS,
INC., Appellant,

v.

Sam L. BALLARD, Appellee.

No. 1059.

Court of Civil Appeals of Texas,
Corpus Christi.

June 30, 1976.

Rehearing Denied Aug. 30, 1976.

A. H. Evans, Vinson, Elkins, Searls, Connally & Smith, William LaFuze, Houston, for appellant.

Jack Hayden, Houston, John R. Feather, Dallas, for appellee.

## OPINION

YOUNG, Justice.

Sam L. Ballard brought this suit against Crutcher-Rolfs-Cummings, Inc., to recover for breach of a patent license agreement and for breach of a confidential relationship. Trial was to a jury who answered the issues in favor of Ballard. Judgment was entered that Ballard recover actual damages of $674,873.02 and punitive damages of $650,000.00, for a total of $1,324,873.02. The defendant corporation (hereinafter called "CRC") appeals.

The appellant is a Texas corporation founded in 1933 for the purpose of manufacturing, selling and renting pipeline equipment. In 1949 Ballard approached the president of the appellant corporation, Mr. A. S. Crutcher, to solicit his assistance in developing a cold pipe vertical bending machine. Ballard demonstrated to Mr. Crutcher and several corporate officers a scale model of his machine. The president was favorably impressed and Ballard was immediately placed on the corporation's payroll. The parties agreed that Ballard would utilize the corporation's shop facilities in building a cold pipe vertical bending

machine of his design capable of bending 30″ pipe. The corporation agreed to pay all the expenses incidental to securing a patent. A royalty of 5% was agreed upon. A letter reflecting the terms of their agreement was drawn and signed on November 8, 1949, by Ballard and A. S. Crutcher.

In March, 1950, Ballard filed in the United States Patent Office a patent application for a vertical pipe bending machine operated by cables. On November 3, 1950, the United States Patent Office declared an interference to determine priority of inventorship between the application filed by Ballard and one filed June 14, 1948, by John L. Coody. Ballard contended before the Board of Patent Interferences that he conceived and reduced to practice the invention prior to Coody, and that Coody derived the invention from him.

The invention was born from the need which arose in the pipeline industry for a portable machine for field use which would perform smooth cold bending of large diameter steel pipes of the type used in cross country oil and gas pipelines. Such pipes are generally within the range of 12 to 36 inches in diameter and bend specifications require that the bends be full, round, smooth and wrinkle free.

The Ballard machine is operated by a single cable for bending pipe in a vertical plane. A frame is provided which is movable along the right of way of the pipeline and it carries a fixed mounted, downwardly facing, bending die near the upper portion. The die is shaped to receive the upper semi-periphery of the pipe to be bent and is longitudinally curved to the bend desired in the pipe. Below and at one end of the die is a holding shoe which is employed for engaging the underside of the pipe and preventing downward movement during the bending operation. The bending is accomplished by the use of a single cable which is drawn by a winch through a series of pulleys.

In contrast to the Ballard machine which bends the pipe vertically, Coody's machine bends it horizontally utilizing hydraulic force applying means. Both, however, use multiple force applying means and the same essential elements: a fixed curved bending die, a movable holding shoe, and a movable stiff straight bending shoe having a part overlapping the die.

Cinch, Inc. was the owner of the license to the Coody patent application and was actively competing against the appellant in the pipe bending machine market. By decision of the Board of Patent Interferences, Ballard was awarded priority of the invention and Cinch filed suit to set aside this decision. This litigation was ultimately settled by agreement in 1954 in which Ballard and CRC agreed not to sue Cinch for infringement of any patent claims by reason of the manufacture, use, sale or rental of hydraulically-operated pipe bending machines and Cinch agreed not to sue CRC for infringement of any patent claims by reason of the manufacture, use, sale or rental of cable-operated pipe bending machines.

On December 6, 1954, Ballard and the appellant reconfirmed their license agreement by executing a second written instrument. By its terms Ballard granted to the appellant the exclusive, indivisible right and license to manufacture, have manufactured, use and sell the apparatus embodying the inventions as disclosed by Ballard's patent and patent applications and any and all modifications and improvements that Ballard then owned or controlled or might own or control during the term of their agreement. The appellant agreed to pay a royalty of 5% of the net selling price and of the rental receipts of the pipe bending machines.

By 1965, the appellant's competitor, who was manufacturing the Coody hydraulically-operated pipe bending machine, was capturing the greater portion of the pipe bending machine market. In January 1966, the appellant purchased all of the issued and outstanding shares of its principal competitor, the CGM Corporation (successor to Cinch), and thereby acquired 82.04% of the outstanding shares of the Crose United Corporation.

In February 1966, Ernest E. Cummings, a director and vice president of CRC ap-

proached Ballard to persuade him to sign a letter of agreement to the effect that Ballard would not be entitled to a royalty on the hydraulically-operated bending machines manufactured, used or sold by CRC. Ballard was not persuaded and refused to sign the agreement.

In May 1966, the appellant transferred substantially all of the operating assets of CRC to Crose United Corporation. Also in May 1966, the name Crose United Corporation was changed to CRC-Crose-International, Inc., (hereinafter called "Crose"). The assets transferred by the appellant included hydraulically-operated bending machines, but did not include the cable bending machines. Thereafter, the appellant continued leasing and selling cable-operated bending machines and Crose continued leasing and selling hydraulically-operated bending machines and paying royalties therefor to the successors of the Coody patent rights.

The jury found, in part, that: 1) the pipe bending machines and bending sets manufactures, used, rented or sold by Crose were substantially in accordance with, or the equivalent of, the Ballard pipe bending machines; 2) a confidential relationship existed between Ballard and CRC from November 1949 through February 1966; 3) CRC breached the confidential relationship by failing to pay royalties and the net revenue resulting from the manufacture, use, sale and rental of pipe bending machines by Crose; 4) $674,873.02 would compensate Ballard for the breach of confidence; 5) CRC failed to perform under the contract by transferring assets to Crose; 6) $674,873.02 would compensate Ballard for the breach of contract; 7) the president of CRC knew or should have known of the failure to pay royalties; 8) Ballard should recover punitive damages of $650,000.00.

■ We note at this point in our discussion that the appellant has assigned 68 points of error. Among these are numerous no evidence or legal sufficiency points of error. With each such point of error, we shall view the evidence in a light most favorable in support of the jury finding and consider only the evidence and inferences which support the finding and reject the evidence and inferences contrary to the findings. *Miller v. Riata Cadillac Company,* 517 S.W.2d 773 (Tex.Sup.1975). In considering the appellant's insufficient evidence or factual sufficiency points of error, we shall examine the whole record to determine if the evidence supports the jury's findings. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The appellant first contends in points of error 1 through 7 that the trial court erred in failing to submit issues inquiring as to the vicarious liability of appellant for the business activities of Crose. The argument is that special issues 3, 4 and 5 are worded such that the jury was required to assume that vicarious liability existed.

The special issues 3, 4 and 5 which were submitted to the jury and their answers thereto are as follows:

## "SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that Crutcher-Rolfs-Cummings, Inc. breached the confidential relationship with Sam L. Ballard by failing to pay royalties on the net revenue resulting from the manufacture, use, sale and rental of the pipe bending machines and bending sets of CRC-Crose International, Inc. between May 1966 and May 17, 1972?

Answer 'We do' or 'We do not'. Answer: We do.

If you have answered Special Issue Nos. 2 and 3 'we do', and only in that event, then answer:

## SPECIAL ISSUE NO. 4

What amount of money, if any, do you find from a preponderance of the evidence will compensate Sam L. Ballard for the breach of the confidential relationship by Crutcher-Rolfs-Cummings, Inc. in failing to pay royalties on the pipe bending sets manufactured, used, rented and sold by CRC-Crose International, Inc. from May 1966 through May 17, 1972?

Answer in dollars and cents. Answer: $674,873.02.

SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that Crutcher-Rolfs-Cummings, Inc. failed to perform under the license agreement of December 6, 1954 by transferring in 1966 the manufacturing, using, renting and selling of vertical hydraulic pipe bending machines and bending sets to CRC-Crose International, Inc.?

Answer 'We do' or 'We do not'. Answer: We do."

■ We cannot agree that these special issues assume vicarious liability. Ballard does not complain of the actions of Crose. The wrong complained of is the use of the device by the appellant without accounting to Ballard. The theory of recovery is a cause of action for breach of confidential relationship or wrongful use of a trade secret. The secret ideas for the device were disclosed in confidence prior to its being patented. The appellant transferred the production of the device to a subsidiary corporation that did in fact produce a similar device. In this manner, the appellant used the secret information of Ballard without accounting to him. That is, the appellant divested itself of the means of production and yet continued to share in the benefits of production through ownership of the stock in Crose. Each alleged wrongful act was found by the jury to be committed by the appellant, not the subsidiary. It was not necessary, therefore, to establish vicarious liability in the present case. Appellant's points of error 1 through 7 are overruled.

The appellant next argues in points of error 8 through 20 that the trial court applied the wrong measure of damages in submitting special issues 4 and 6. It contends that special issues 4 and 6 require the jury to base the measure of damages upon the business done by Crose rather than the business that would have been done by the appellant. Appellant further contends that the damages are excessive and that the proper measure of damages, if any, would have been 5% of the revenue the appellant would have received had the appellant not purchased the stock of Crose United in 1966 and had not transferred certain business assets to Crose in 1966. It is also contended that there is no evidence or insufficient evidence to support the submission of or jury findings of special issues 4 and 6.

Special issue 6 was submitted as follows:

"SPECIAL ISSUE NO. 6

What amount of money, if any, do you find from a preponderance of the evidence will reasonably compensate Sam L. Ballard for the failure, if any, of Crutcher-Rolfs-Cummings, Inc. to perform under the license agreement of December 6, 1954?

Answer in dollars and cents. Answer: $674,873.02."

We do not agree that special issues 4 and 6 require the jury to base the measure of damages upon the business done by Crose. On the contrary, we find an absence of instruction to the jury in special issues 4 and 6 as to the proper measure of damages. The appellant submitted, separate and apart from his objection to the charge, a written instruction in the following form which was refused by the trial judge.

"The measure of damages is 5% of the revenue that defendant Crutcher-Rolfs-Cummings would have received if defendant Crutcher-Rolfs-Cummings had not purchased the stock of Crose United in 1966 and had not transferred certain of its business assets to CRC-Crose International in 1966. You are not to consider the amount of business done by CRC-Crose in determining the damages, if any, suffered by plaintiff Ballard. You may consider only the amount of business that would have been done by defendant Crutcher-Rolfs-Cummings but for the acts, if any, complained of by plaintiff Ballard.

Refused 11/14/1974
11/25/a.m.
/s/ Madison Rayburn
Judge 80th Dist.Crt.
Texas"

■ It is the duty of the trial court to give the jury, in its charge, the rule to be applied in ascertaining the damages. *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 90 (Tex.Sup.1973); *International-Great*

*Northern R. Co. v. Casey,* 46 S.W.2d 669, 671 (Tex.Com.App.1932, holding adopted). In the absence of a required instruction, the complaining party must, in accordance with Rule 279, T.R.C.P., submit an instruction which is in substance correct in order for the error to constitute a ground for reversal. *Yellow Cab and Baggage Company v. Green,* 154 Tex. 330, 277 S.W.2d 92 (1955). The issue thus becomes whether or not the requested instruction offered by the appellant about the measure of damages was substantially correct in the form in which it was submitted and refused. We hold that it was not. Ballard attempted to recover royalties that were not paid under the contract of December 6, 1954. By the terms of the contract the parties agreed that the licensee could manufacture, use, sell, or rent the device or have a third party perform these functions. It was also agreed that a 5% royalty would be paid upon the net selling price and rental receipts of the device. As we construe the contract, it is not significant who performs these functions or who receives the revenue from the customer. The royalty is due when the device is sold or rented by either the licensee or a third party whom the licensee has permitted to perform these functions. The jury found in special issue 1 that the machines produced by Crose were the equivalent of those covered in the Ballard license agreement. A corporation that contracts to pay royalties upon the sale or rental of certain products cannot avoid liability for failure to pay those royalties where, as here, the assets for the production of those products are transferred to a subsidiary corporation that does in fact produce, sell and rent a substantially equivalent product. We find that the record will support this theory of recovery and will, therefore, support the submission of and the jury's answer to special issues 4 and 6.

Attacking special issues 5 and 6 the appellant contends in point of error 38 through 46 that there is no evidence that CRC failed to perform under the license agreement of December 6, 1954, by transferring in 1966 the manufacturing, using, renting and selling of vertical hydraulic pipe bending machines and bending sets to Crose. We must agree with the appellant that by the terms of the contract of December 6, 1954, a transfer of these functions does not constitute a failure to perform under the agreement. In fact, the license agreement expressly provides that the licensee has the right not only to manufacture the apparatus, but also has the right to have it manufactured. A breach does not occur until a party to an agreement fails to perform an act or thing that he has expressly or impliedly promised to do. *Foster v. Wagner,* 343 S.W.2d 914, 917 (Tex.Civ. App.—El Paso 1961, writ ref'd n. r. e.). We cannot say that the appellant expressly or impliedly promised not to transfer the production, sale, use or rental of the device. It is the failure to pay the royalties that constitutes a breach of the agreement; not the transfer of the production and marketing to the subsidiary. We hold, therefore, that there is no evidence to support the submission of or jury answer to special issue 5. This will not, however, preclude affirmance of the judgment. The judgment may be affirmed on the jury's answers to other special issues and thus the error in submitting special issue 5 is harmless. *City of Lubbock v. Onley,* 498 S.W.2d 429 (Tex.Civ. App.—Amarillo 1973, writ ref'd n. r. e., Tex. 506 S.W.2d 208); Rule 434, T.R.C.P.

The additional theory of recovery asserted in the trial court was a breach of confidential relationship. The issues submitted to the jury on this theory were special issues 2 and 3. We have previously set out special issue 3. Special issue 2 was submitted as follows:

"SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that a confidential relationship existed between Sam L. Ballard and Crutcher-Rolfs-Cummings, Inc. from November 1949 through February 1966?

You are instructed that by the term 'confidential relationship' as used in the above issue is meant every form of relationship between parties wherein confidence and special trust is reposed by one in another and he is justified in placing

such trust and confidence in such other party and relies upon such other party to protect his interest. This relationship is based upon fair dealing and good faith, rather than legal obligation. The term includes informal relationships, such as moral, social, domestic or merely personal ones, where one person trusts in and relies upon another.

Answer 'We do' or 'We do not'. Answer: We do."

■■■■ The appellant contends in points 21 through 37 that the necessary implication of the jury's response to special issue 2 is that the confidential relationship existed only through February 1966, and thus did not exist at the time of the alleged breach, May 1966. We do not agree. Although there is an absence of a jury finding that a confidential relationship existed at the time at which the jury found the breach to have first occurred, we find that the facts of the present case show there existed a confidential relationship at the time of the breach as found by the jury as a matter of law. It was, therefore, not necessary for the jury to make a determination of the legal status of their relationship at that specific time. *Hyde Corporation v. Huffines,* 158 Tex. 566, 314 S.W.2d 763, 769 (1958). Appellant and Ballard were not only licensor and licensee, they were also joint adventurers. 46 Am. Jur.2d Joint Ventures § 26, p. 47–8; *Hayton v. Appleton Mach. Co.,* 179 Wis. 597, 192 N.W. 168 (1923); *United Tool & Mfg. Co. v. Gray,* 264 Mich. 566, 250 N.W. 312 (1933). The duration of their relationship was specified in their contract which provided that it should continue for the life of the patents unless terminated earlier by agreement. Ballard disclosed the secret details of his invention in confidence to the president of the appellant corporation for the purpose of enabling the president to appraise its value. Their negotiations culminated in a licensing agreement. The fiduciary character of the relationship between appellant and Ballard imposed on each an obligation of utmost good faith, fairness and honesty in their dealings with each other. *Murphy v. McLaughlin,* 374 S.W.2d 754 (Tex.Civ.App. —Houston 1964, writ, ref'd n. r. e.); *Starr*

*v. Ripley,* 265 S.W.2d 225 (Tex.Civ.App.— Austin 1954, no writ). The appellant may not, without sanction of law, use the information imparted in confidence adversely to Ballard. *Hyde Corporation v. Huffines,* supra. Their relationship was not, as suggested by the appellant, simply an arms-length transaction between businessmen. The facts of the present case are distinguishable from those in *Patton v. Callaway,* 522 S.W.2d 252 (Tex.Civ.App.—El Paso 1975, writ ref'd n. r. e.), urged by appellant, because here there was a disclosure of confidential information whereas in *Patton* there was not. Because we have found that the record in the present case shows as a matter of law a confidential relationship existed between the parties, any error occasioned by the submission of special issue 2 and the accompanying instruction is harmless. Rule 434, T.R.C.P. We overrule, therefore, the appellant's contentions concerning this matter.

■■■■ The appellant further argues in this regard that this suit is barred by the statute of limitation because the suit was not brought within two years of the date when the first alleged breach of confidential relationship must have occurred. That is, the breach could not have occurred after February 1966. Our above discussion is also applicable to this point of error. This suit was filed March 1, 1968. The jury, based on sufficient evidence, found the breach of confidence occurred first in May 1966. (Special issue 3) We hold, therefore, that the cause of action is not barred. Appellants' points of error 21 through 37 are overruled.

The appellant next complains in points of error 47 and 48 of the award of punitive damages. It is argued that even assuming the existence of a confidential relationship and breach thereof, the tort was not separate and distinct from the breach of contract and will thus not support an award of punitive damages.

■■■■ As a general rule punitive damages are not recoverable in an action for breach of contract, even though the breach

be malicious and oppressive. *A. L. Carter Lumber Co. v. Saide,* 140 Tex. 523, 168 S.W.2d 629, 631 (1943); *McDonough v. Zamora,* 338 S.W.2d 507, 513 (Tex.Civ.App.— San Antonio 1960, writ ref'd n. r. e.). If, however, in addition to or contemporaneously with a breach of contract a tort is pled and proved, punitive damages may be recovered. It is not necessary that the tort and the contract arise out of separate and distinct transactions. The requirement is simply that both a tort and breach of contract be separately pled and proved, which appellee has done in our case. A breach of confidence may also be a breach of contract. *Hyde Corporation v. Huffines,* supra; *McDonough v. Zamora,* supra; *Briggs v. Rodriguez,* 236 S.W.2d 510, 515 (Tex.Civ. App.—San Antonio 1951, writ ref'd n. r. e.). Points of error 47 and 48 are overruled.

The appellant also contends in points of error 49 through 53 that there was no evidence to support the submission of special issue 8. In points of error 55 through 57 and 59 he contends that there was insufficient evidence to support the jury's answer thereto and that the accompanying instruction is improper as constituting a comment on the weight of the evidence. Special issues 7 and 8 and the jury answers thereto were as follows:

### "SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that William Carey Crutcher of Crutcher-Rolfs-Cummings, Inc., knew or should have known of the failure to pay Sam L. Ballard royalties on the pipe bending machines and bending sets manufactured, used, rented and sold by CRC-Crose International, Inc. from May 1966, through May 17, 1972?

Answer 'We do' or 'We do not'. Answer: We do

If you have answered Special Issue No. 7 'We do', and only in that event, then answer:

### SPECIAL ISSUE NO. 8

From a preponderance of the evidence what sum of money, if any, do you find should be recovered by Sam L. Ballard against Crutcher-Rolfs-Cummings, Inc. as punitive damages?

In connection with this issue you are instructed that punitive damages may be recovered only where there has been oppressive conduct or a reckless or malicious disregard of the rights of another. Punitive damages are intended as a warning and an example to prevent the Defendant and others from the commission of like offenses and wrongs. In a legal sense an unlawful act done willfully and purposely is, as against that person, malicious.

Answer in dollars and cents. Answer: $650,000"

The evidence in the record which we consider to support the submission of the issue of punitive damages is that the appellant attempted to obtain from Ballard a waiver of his claim to royalties by reason of the appellant's manufacture, use or sale of hydraulically-operated bending machines; that failing in this attempt, the appellant transferred to a subsidiary the assets for the production of these machines and thereafter refused to pay royalties on the machines produced by the subsidiary; and that the machines produced by the subsidiary were substantially in accordance with or the equivalent of the vertical bending machines covered by Ballard's patent. The jury could properly infer from this conduct that the appellant, believing Ballard to have a valid claim to royalties on the hydraulically-operated machines and the appellant being unable to obtain a waiver to this claim, sought to conceal the activities giving rise to an obligation to pay royalties to purposefully injure Ballard. In summary, the appellant's conduct can be characterized as the implementation of a scheme to use the knowledge of the invention, which was given in confidence, to the detriment of Ballard.

The objection leveled by the appellant to the instruction accompanying special issue 8 at the trial was that the instruction was "improper in that it constitutes a comment on the weight of the evidence." However, the appellant now argues in his

brief that the instruction would allow the jury to answer affirmatively if they found that the appellant's conduct had been "reckless" or "oppressive". The appellant has thus failed to point out distinctly in his objection to the charge of the court the grounds which he asserts here. The defect is therefore waived. Rule 274, T.R.C.P.; *Northshore Bank v. Palmer,* 525 S.W.2d 718 (Tex.Civ.App.—Houston (14th Dist.) 1975 writ ref'd n. r. e.). The appellant's points of error 50 through 53, 55 through 57 and 59 are overruled.

■■■ The appellant in point 54 further contends that the award of punitive damages is excessive. We cannot agree. The amount to be awarded as punitive damages rests largely within the discretion of the jury and unless the award is so large as to indicate that it is a result of passion, prejudice or corruption, or that evidence has been disregarded, the award will not be set aside. The appellant has not demonstrated to us that the award is the result of any of those matters. *Bond v. Duren,* 520 S.W.2d 460 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.). Appellant's point 54 is overruled.

■■ The appellant further complains in point of error 58 of the submission of special issue 7 because it is evidentiary, without pleading and constitutes a comment on the weight of the evidence. The appellant, however, has not briefed this point and we shall consider it waived. Rule 418, T.R.C.P.

In points of error 60 through 68 the appellant complains of special issue 1 and the jury's answer thereto. The issue and answer were as follows:

"SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the pipe bending machines and bending sets manufactured, used, rented or sold by CRC-Crose International, Inc. between May 1966 and May 17, 1972 were substantially in accordance with, or the equivalent of, the Ballard pipe bending machine and bending sets as covered by claims 6, 23 or 24 of the Ballard Patent?

You are instructed that, in order to answer the foregoing Special Issue 'We do', you must find that each such machine contains all of the elements of claim 6, 23 or 24, or their equivalents. A claim does not cover a machine if any element of the claim is absent or omitted from the machine, unless there is an equivalent element in the machine, or that which remains does all that the former combination did. An equivalent element is defined as an element that performs substantially the same function in substantially the same way to obtain the same result.

Answer 'We do' or 'We do not'. Answer: We do"

■■ The appellant urges that special issue 1 incorrectly defines the scope or coverage of the Ballard patent and contends that the proper definition of the protection afforded the holder of a patent is a matter strictly within the area of federal law. Ballard does not, however, claim damages for the infringement of his patent. The fact that his device is patented is merely incidental to his cause of action. The rights he seeks to protect are those which arise under the contract and the confidential relationship. It has been held that such a suit is not within the patent laws of the United States. *Luckett v. Delpark,* 270 U.S. 496, 502, 46 S.Ct. 397, 70 L.Ed. 703 (1926). The technicalities of federal patent laws are not determinative of Ballard's rights under the subject contract and confidential relationship. *Saco-Lowell Shops v. Reynolds,* 141 F.2d 587, 596–97 (4th Cir. 1944). Without approving the form and substance of special issue 1, we overrule points of error 60 through 68.

The judgment of the trial court is affirmed.