### HOFFMAN et al. v. MAGNOLIA PETROLEUM CO. et al. (No. 7129.)

(Court of Civil Appeals of Texas. San Antonio. March 26, 1924. Rehearing Denied April 23, 1924.)

1. **Mines and minerals** ⬤⟹79(1)—**Conveyance of minerals, etc., in part of leased tract of oil land subject to lease construed as to right to royalties.**

Conveyance to plaintiff of undivided one-half interest in all minerals, etc., in 90 acres of leased tract of 320 acres, followed by description of the 90 acres by metes and bound, *held*, notwithstanding further clause as to right to royalties "due to be paid under the terms of said lease," not to entitle plaintiff to any part of royalties or rentals except such as arose from the 90 acres.

2. **Mines and minerals** ⬤⟹47—**Owner may drill well close to boundary line and thereby drain oil from adjoining neighbor's land.**

By drilling well close to boundary line of his land an owner may drain oil or gas from that of his adjoining neighbor; remedy of latter being to drill offset wells.

3. **Mines and minerals** ⬤⟹74—**Sale of oil and gas in part of leased tract held not to affect lessee's right to drill in any part of tract.**

Sale to plaintiff, with full knowledge of facts of interest in oil and gas in 90 acres forming part of tract, of 320 acres subject to prior lease to another of whole tract, did not deprive lessee of any drilling rights he had in whole tract.

4. **Mines and minerals** ⬤⟹74—**Purchaser of mineral rights in leased tract subject to lease may not dictate to lessee manner of executing lease.**

A lessee cannot have purchaser, subject to lease of mineral rights in certain acreage of his leased lands, forced on him so as to be able to dictate to him as to the manner in which he shall execute terms of his lease.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by Peter L. Hoffman and others against the Magnolia Petroleum Company and others, in which defendant F. A. Weiser interposed a cross-complaint. From a judgment sustaining general demurrer to the complaint and cross-complaint, plaintiffs appeal. Affirmed.

Cooke, Dedman & Potter and Clay Cooke, all of Fort Worth, for appellants.

O. F. Wencker, of Dallas, A. E. Hampton, of De Leon, and Goree, Odell & Allen, of Fort Worth, for appellees.

W. H. Francis and A. S. Hardwicke, both of Dallas, for appellee Magnolia Petroleum Co.

FLY, C. J. This is a suit instituted by Peter L. Hoffman against the Magnolia Petroleum Company, the Trans-Continental Oil Company, Tex-Pen Oil Company, United Producers' Pipe Line Company, and 24 individuals, for an accounting by the pipe line companies, and for the recovery of a share of the oil produced upon a certain tract of land consisting of 320 acres, more or less. A general demurrer was sustained to the petition as well as to a cross-action of F. A. Weiser, one of the defendants.

In substance the petition, which is quite long and complicated, alleges that defendants J. N. Duke and wife, on January 1, 1918, executed an oil and gas lease on 320 acres to R. O. Harvey, reserving certain money for rent and one-eighth of all oil produced on the property, $200 a year for each gas well, $10 a year for each oil well from which gas was also sold, $15 per year for each well from which casing head gas is manufactured into gasoline, and $330 each six months that drilling operations are delayed. Afterwards the said lessors, Duke and wife, conveyed to Peter L. Hoffman an undivided one-half interest in all minerals, oil, and gas in and under 90 acres out of the leased 320 acres of land.

[1] The mineral deed contained the following provision:

"It is understood and agreed that this sale is made subject to said lease, but covers and includes one-half of all the oil royalty and gas rental or royalty due to be paid under the terms of said lease. It is agreed that one-half of the money rentals which may be paid to extend the term within which a well may be begun under the term of said lease is to be paid to the said Peter L. Hoffman."

On that clause is based a claim for one-half of all the oil and gas royalties and rentals payable under the lease, of which it was alleged that the Trans-Continental Oil Company was the present owner, by assignment of the original lease.

The claim of appellant Hoffman is that he is entitled not only to one-half of the oil and gas royalties from the 90 acres, the mineral rights of which were conveyed to him by Duke and wife, but also that "he is in truth and in fact entitled to one-half of all the royalties payable under the terms of said lease, or if not entitled to all of one-half oil rentals and royalties payable under the terms of said lease, then he is entitled to $45/320$ interest in all of the oil and gas royalties and rentals accruing under the terms of said lease." It is not alleged that any oil or gas has been found or taken from the 90 acres, but that appellees have drilled wells surrounding said 90 acres and drained oil therefrom to appellant's damage. The deed from Duke and wife conveys to Hoffman "one-half (½) interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands, situated in Comanche county, Texas, to wit: A certain 90 acres, etc.," describing it by metes and bounds.

There is no allegation that any well had been sunk on the 90 acres conveyed to appellant; the claim being that appellant, by the terms of his contract, is entitled to part of the gas and oil royalties and rentals from the 320 acres of land, or is entitled to some amount by reason of the oil being drained through wells on the other parts of the land.

No reasonable construction of the instrument given by Duke and wife to Hoffman would entitle him to anything except to a certain interest in and to all the oil and gas royalties and rentals on the 90 acres of land. The language of the conveyance is that the grantors convey to Hoffman the oil, gas, and other minerals from the 90 acres of land, followed by a description of the land by metes and bounds, and the further statement:

"It is understood and agreed that this sale is made subject to said lease, but covers and includes one-half of all the oil royalty and gas rental or royalty due to be paid under the terms of said lease."

Due to be paid on what? Why the land that was being conveyed, of course, because that was all the conveyance had any reference to. The forced construction of the deed indulged in by appellants cannot be sanctioned, and such construction cannot form the basis of a claim against other parts of the land.

[2] The allegations as to the oil and gas being drained from the 90 acres is vague and indefinite. There is no allegation that wells had been drilled so near the boundary lines of the 90 acres of land as to draw the oil and gas therefrom, and if there had been it would not form the basis for a cause of action. The remedy would be to drill a sufficient number of offset wells along the lines to protect the owner's property from the drainage. Thornton, Law of Oil and Gas, §§ 109 and 882; Gain v. South Penn Oil Co., 76 W. Va. 769, 86 S. E. 883; L. R. A. 1916B, 1002. In the case cited it was held that the drilling of wells near the division line afforded no basis for a claim to a share in or an accounting for the oil so produced, or for a receivership thereof.

The law applicable to cases of draining oil and gas from the land of another is thus

stated by Thornton in section 109, herein cited:

"By drilling a well close to the boundary line of his land the owner may not only drain the oil or gas from his own territory, but from that of his adjoining neighbor. This is easily perceived in instances of drilling wells on ordinary town lots, which are often only thirty or forty feet wide and three or four times as long. It is quite obvious in such an instance one well may drain the oil or gas from under several or even many lots. And yet, who has the right to say the owner of a lot may not put down a well on it for fear, or from the fact, he may get the oil or gas, or a part of it, under his neighbor's lot? His neighbor has the power to protect his interests, by sinking a well on his own lot; and if he does not see fit to do so, he has no right to prevent another and adjoining lot owner from developing his own territory. He cannot play, as it were, 'the dog in the manger' policy. Of course, the same is true of larger tracts—tracts of even hundreds of acres."

[3] The facts alleged in the petition may seem to differentiate it to some extent from cases in which the owner or lessee of land adjoining another drills wells which drain the other's land. In this case the owners leased all of the land to a certain lessee and afterwards sold one-half interest in and to all of the oil, gas, and other minerals in and under 90 acres of the leased land. This sale was made subject to the prior lease to R. O. Harvey. Under that lease the lessee had the right to dig wells on any part of the land that might be desirable to him, and his choice of location could not be controlled by the lessor or any subsequent vendee of the lessor. Duke and wife did not reserve the right to select the points on the leased land at which wells should be sunk, but that was the prerogative and right of the lessee. If he chose to dig wells close to the 90 acres conveyed to Hoffman, he undoubtedly had the right to do so, without interference on the part of his lessor or Hoffman. The latter was in no better or stronger position than his vendor, the lessor of the 320 acres of land, and Hoffman bought with full knowledge of all the facts necessary to put him upon notice of everything in connection with the lease. The sale could not and did not deprive the lessee of any rights he had in all the land.

In the case of Kimbley v. Luckey, 179 Pac. 928, decided by the Supreme Court of Oklahoma, Floyd Luckey, the owner of a certain tract of land, leased it to one Lambert for five years, for oil and gas purposes. After-

wards Luckey conveyed the land to Louis Luckey, and they then joined in another lease to Lambert on the tract of land. Afterwards the Luckeys sold 40 acres of the land to two parties named Sheedey. No oil was produced by Lambert on the 40 acres, but it was produced in considerable quantities on the remaining 120 acres. The plaintiffs in the case sued for an apportionment of all gas and oil royalties from the entire 160 acres. The court held:

"But the making of the deed in no wise affected Lambert's rights under his lease, as the deed itself * * * especially excepted the oil and gas lease. * * * The oil and gas under the 160 acres of land belonged to the Luckeys, subject only to the license or lease, so called, held by Lambert, to explore for oil and gas and produce the same when discovered. When there was carved out of this tract and conveyed to Alexander and his cotenants a portion of the lands, they pro tanto succeeded to the interest of the Luckeys, not only in the fee, but in the oil and gas produced on the 40-acre tract. But they acquired no additional or greater interest by their purchase."

That case is very much in point in this.

Fraud on the part of the appellees is not alleged in the petition, the object of the suit being to obtain royalties and rents, not on the 90 acres alone but on the 320 acres. There is no allegation that there has been any discrimination against appellants, and no allegation that wells were being dug near the boundary lines of the 90-acre tract; the only allegation being "that they have drilled wells surrounding said 90 acres and have drained oil therefrom."

[4] It is not alleged that appellants have requested the lessee of the land to sink wells on the 90 acres as offsets to wells dug near it, and bad faith or fraud on the part of the lessee was not alleged. There is no relation of trust or confidence existing between the lessor and lessee, and consequently none between appellants and the lessee. The lessee cannot be called upon to work in the interest of appellants and for the profit of the latter. The lessee cannot have a purchaser of mineral rights in a certain acreage of his leased lands forced on him, who would dictate to him as to the manner in which he should execute the terms of his lease. The purchaser occupies no better position than his vendor does. Colgan v. Forest Oil Co., 194 Pa. 234, 45 Atl. 119, 75 Am. St. Rep. 695.

What has been decided herein applies with equal force to the cross-action.

The judgment is affirmed.