June Benjamin INMAN and Robert H. Stromstedt, Appellants,

v.

Michael PADREZAS and Joe Pasowicz, Appellees.

No. 1079.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1976.

Wm. DeWitt Alsup, Alsup & Alsup, Corpus Christi, for appellants.

Anthony Field Constant, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is an appeal from a judgment granting a permanent injunction on behalf of appellees, Michael Padrezas and Joe Pasowicz, against appellants, June Benjamin Inman and Robert H. Stromstedt. Trial was before the court without the intervention of a jury. The trial court rendered judgment that the property in question was part of a public easement granted to the public and that defendants are therefore perpetually enjoined and restrained from obstructing or interfering in any manner the free passage and use by the public on said property. The trial court ordered appellant Inman to remove the fences or any obstruction then erected on the property. From this judg-

ment the defendants have duly perfected their appeal to this Court.

The property in question is located in what is known as Tropic Isles Subdivision in Corpus Christi, Nueces County, Texas. The particular area of which we are concerned is Block 8, Lot 16 and 17 of said Subdivision. No other lots or blocks in the Subdivision are affected by this Opinion. A plat or diagram of the lots and area involved, not necessarily drawn to scale, is incorporated herein for the purpose of clarity and to show the location of the various lots owned by the parties herein involved. This plat will be referred to hereafter.

The plaintiffs are Michael Padrezas and Joe Pasowicz. Mr. Padrezas is the owner of Lot 19 and Mr. Pasowicz is the owner of Lot 15 located in Block 8 of the Tropic Isles Subdivision. The defendants are J. B. Inman, who owns Lot 17 and Mr. Stromstedt, who, although having no present property interest in Tropic Isles Subdivision, did at the time the subject controversy arose own Lot 16 of Block 8 of said Subdivision. The defendants' lots are (as the diagram illustrates) located at the end of and front on Biscayne Cove. Biscayne Cove is a waterway or canal. The end of the Cove forms a part of a circle with Lots 14, 15, 16, 17, 18 and 19 fronting on the circle. The waterway opens through a series of channels throughout the Subdivision into the Laguna Madre behind Padre Island. The plat of the Tropic Isles Subdivision was filed in the deed records of Nueces County in April, 1956. From the plat, it appears that the original owner of the Subdivision was Edwin Flato Company, Inc. which made the following dedication:

"THE STATE OF TEXAS:
    KNOW ALL MEN BY
    THESE PRESENTS
COUNTY OF NUECES:
that the Edwin Flato Co., Inc., a Texas Corporation is the owner and Eugenia Walsh, joined by her husband, is the lienholder of all lands embraced within the boundaries of 'Tropic Isles', an addition in Nueces County, Texas, as shown, on the annexed plat of same and we do hereby adopt the same as 'Tropic Isles', an addition in Nueces County, Texas.

The Tropic Isles Main Channel and the Coves which provide a means of access by water to each of the lots in the addition are hereby dedicated to the public forever. The Laguna Shores Road as shown hereon in the correct position as located on the ground and the drives and roads are all dedicated to the public for the use as such.

This map is made for the purpose of dedication and description.

This the 23rd day of April, 1956."

In 1969, Jon Held Homes, Inc. purchased the property known as Tropic Isles Subdivision. On December 7, 1971, Inman purchased Lot 17 of Block 8 from Jon Held Homes, Inc. The other defendant Stromstedt, purchased Lot 16 on March 24, 1972. The defendants' lots as the plat shows are contiguous to each other. At the water's edge on each lot is located a concrete bulkhead several feet in width. The area in controversy comprises the bulkhead on Lot. 17.

The plaintiffs, Pasowicz and Padrezas, purchased their lots in April of 1972, and February of 1973, respectively. Pasowicz owns Lot 15 and Padrezas owns Lot 19. Lots 15 and 19 are opposite each other and separated by the water in Biscayne Cove. Each of the parties has a home on his respective lots. The depth of the water in the Cove is approximately four feet deep.

When Stromstedt first moved into the area, no fences had been erected by any of the property owners on Block 8 and the bulkheaded area around the end of the Cove was clear and free from any obstructions. That area was frequently used as a passageway or walkway for property owners visiting other landowners on either side of the Cove. In fact, the record shows that plaintiffs frequently used this area around the end of the Cove to visit each other.

In 1973, the owner of Lot 18 (a Mr. Hensley) erected a chain link fence along his property lines, separating his lot from Lot 19 and Lot 17. This fence, however, did not go all the way down to the water's

edge, but stopped several feet before reaching the bulkhead. The owner, however, erected gates which crossed over the bulkhead thus preventing anyone from walking along the bulkhead around the Cove on Lot 18. In September or late August of 1973, defendant Inman also erected fences and gates across the bulkhead contiguous to his land. One gate being located across the bulkhead between Lots 17 and 18 and the other across the bulkhead between Lots 16 and 17. These fences prevented anyone from walking around the inside end of the Cove over the bulkhead. Later, defendant Stromstedt erected a fence or gate across the bulkhead at a point between Lots 15 and 16 also preventing passage around the inside edge of the Cove. Prior to selling his property (Lot 16), Stromstedt removed the fence between Lots 15 and 16 which blocked the bulkhead.

The only area on the bulkhead at the end of the Cove which remained blocked at the time of trial was that portion of the bulkhead between Lots 16 and 18. This is the area in dispute. It consists of a tract of land approximately four (4) to eight (8) feet wide beginning at the water's edge on Lot 17.

The gates as initially erected by Inman were not fixed but had a movable latch allowing them to swing back and forth. Because of the continuous traffic around the bulkhead on Lot 17, and with people leaving the gates open, Inman locked the gates by chaining them shut. The record shows that the chain was broken several times. Padrezas admitted to having cut the chain on one occasion. Criminal charges were filed against him for such act. It can, therefore, be seen the animosity existing between the plaintiffs and defendants.

In order to be certain about their right to block off that portion of the bulkhead, each defendant obtained a quit claim deed from Jon Held Homes on December 13, 1973, purportedly covering the disputed area, i. e., down to the water's edge and including the bulkhead.

The dispute continued, however, with increased bad feelings between the parties.

The plaintiffs contended that the bulkheaded area was always included within the public dedication and defendants contending that the bulkheaded area was within their property lines which afforded them the right to erect a fence across the bulkhead.

On November 20, 1974, plaintiffs (owners of Lots 15 and 19) filed suit against the defendants (owners of Lots 16 and 17) alleging that the bulkheads were within the public dedication of Biscayne Cove and that such area does not form any part of their Lots 16 or 17 and, therefore, defendants have no right to block the bulkhead in any way. Plaintiffs contend that unless the acts and conduct of defendants are enjoined, they will suffer irreparable damage and injury as they have no adequate remedy at law. Plaintiffs further alleged that the defendants instituted criminal proceedings against Padrezas maliciously and without reasonable or probable cause resulting in Padrezas being damaged in the sum of $10,000.00.

The defendants answered specifically denying that the bulkheads in question form any part of any public dedication of record and that such bulkheads are the private real estate of defendants and not subject to public use. The parties agreed that Padrezas' action against defendants for malicious prosecution should be severed from the injunctive action and the trial court, therefore, severed the malicious prosecution action from this suit and proceeded without a jury to hear the action for an injunction. The trial court rendered judgment holding that the property in question was a part of a public easement granted to the public by the dedication of the Tropic Isles Subdivision; the court perpetually enjoined and restrained the defendants from obstructing or interfering in any manner the free passage and use by the public over the area in controversy; and ordered defendant Inman to immediately remove the fences and any other obstructions then erected on the said property. From such judgment, the appellants have duly perfected their appeal to this Court.

In the instant case, no specific findings of fact were requested and none were filed. Under such circumstances, it is presumed upon appeal that the trial judge found every issue of fact necessary to sustain the judgment when such fact issue is raised by the pleadings and it finds support in the evidence. *Buchanan v. Byrd,* 519 S.W.2d 841 (Tex.Sup.1975); *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1951); *Mobil Oil Company v. Dodd,* 515 S.W.2d 351 (Tex.Civ.App.—Corpus Christi 1974, no writ); *Giles v. Wiggins,* 442 S.W.2d 839 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n. r. e.).

The appellants bring forward on appeal nine points of error. In their points 1 and 2, they assert that the trial court erred in granting the injunction because there was no evidence or insufficient evidence that the dedicating grantor (Flato Company) had title to the realty involved (the bulkheaded area) in the alleged dedication.

As we understand appellants' contention with reference to the first two points of error, they assert that the plaintiffs, although proving a dedication, failed to prove that the title to the dedicated property was originally in the grantors, that being Edwin Flato Co., Inc.

A no evidence point of error is a question of law, and in considering the question, it is the duty of this Court to view the evidence in its most favorable light, considering only the evidence and reasonable inferences drawn therefrom in support of the judgment and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup.1965); *Transport Insurance Company v. Mabra,* 487 S.W.2d 704 (Tex.Sup.1972). In deciding an insufficient evidence point, this Court is required to consider all of the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Plaintiffs introduced into evidence their Exhibit 1 which was a true and correct copy of a dedicatory plat of Tropic Isles Subdivision which had been on file in the Nueces County Clerk's Office since April 27, 1956. On the plat, there appears the following statement:

*"That the Edwin Flato Co., Inc., a Texas Corporation is the owner and Eugenia Walsh, joined by her husband, is the lienholder of all lands embraced within the boundaries of 'Tropic Isles', an addition in Nueces County, Texas,* as shown on the annexed plat of same and we do hereby adopt the same as 'Tropic Isles', an addition in Nueces County, Texas. The Tropic Isles Main Channel and the Coves which provide a means of access by water to each of the lots in the addition are hereby dedicated to the public forever. The Laguna Shores Road as shown herein in the correct position as located on the ground and the drives and roads are all dedicated to the public for the use as such.

This map is made for the purpose of dedication and description.

This the 23rd day of April, 1956.

Edwin Flato Co., Inc.

By ___s/s Fred Flato___

Fred Flato, President"

(Emphasis supplied.)

Plaintiffs also introduced into evidence deeds by which they, as well as the defendants, obtained their property. Each deed referred to the plat on file with the County Clerk. The evidence shows that all the parties bought their lots by deeds, each referring to the plat. Other lots were sold by deeds also referring to the plat. All of this is some evidence showing that title to the property dedicated (whatever it may have included) was in the dedicators at the time of the dedication. *Adams v. Rowles,* 149 Tex. 52, 228 S.W.2d 849 (1950).

Appellants rely on the cases of *Gladewater Lumber & Supply Co. v. City of Gladewater,* 87 S.W.2d 527 (Tex.Civ.App.—Texarkana 1935, no writ) and *Chenowth Bros. v. Magnolia Petroleum Co.,* 129 S.W.2d 446 (Tex.Civ.App.—Dallas 1939, writ dism'd jdgmt. cor.) In the *Gladewater Lumber Company* case, supra, the plaintiff was held to have the burden of establishing title in the dedicator to the street, upon which depended the plaintiff's right to recover. The

Supreme Court in *Adams v. Rowles,* supra, expressly disapproved the *Gladewater Lumber Company* case. The Supreme Court in referring to *Chenowth Bros. v. Magnolia Petroleum Co.* case stated: "The Supreme Court expressly refused to approve the law points involved, but only approved the result reached by noting on the application for the writ 'Dismissed Correct Judgment.' ". The evidence in the *Chenowth Bros.* case affirmatively showed absence of title on the part of two of the dedicators. The case held there was never any acceptance of the proposed dedication. The above cases are not in point and provide no authority for appellants' propositions. We hold that there was sufficient evidence to show that title to the property dedicated was in the dedicator at the time the dedication was made. No contrary proof of ownership of the dedication was shown. Appellants' points of error 1 and 2 are overruled.

■ Appellants by their third point of error raise the question as to whether the disputed area was included in the dedication. The point of error reads: "Appellants would show the Court that there is *no credible evidence* of a survey showing with ex- actness the disputed area to actually be within the metes and bounds description of the alleged dedication." This point raises a no evidence point and, therefore, as stated above, we are required to view the evidence in the most favorable light, considering only the evidence and reasonable inference drawn therefrom in support of the judgment and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* supra.

The burden here was on the plaintiffs to prove that the disputed area was within the public dedication. The plat (Exhibit 1 inserted in this Opinion) shows that at the end of Biscayne Cove a half circle is formed with an arc of 180 degrees and a radius of 50 feet from the center of the cove. The disputed area comprises a strip of land apparently four (4) to eight (8) feet in width from the water edge and 39.27 feet in length. Neither party to this lawsuit obtained the services of a surveyor to accurately settle the dispute. It cannot be determined from the plat on file, the deeds introduced in evidence, or the surveys of other lots within the subdivision, whether or not the disputed area is included within the dedicated area or was included within the dimensions of Lot 17.

EXHIBIT 1

One of the plaintiffs, Padrezas, testified that after the erection of the gates on Lot 18 which blocked the bulkhead, he began making measurements of the area to determine if the disputed area was part of Lot 17 or whether it was included in the dedicated area. He was questioned about the measurements:

"A Yes. I would say probably in after August and possibility of September through—actually, even into December, I was taking physical measurements of Lot 19, which is my property.

Lot 18: I completely measured it. I completely measured Lot 15; physically measured all these lots. Also, during this time period, I physically measured the lengths of the bulkhead, the distance between the bulkhead and the fence, and *then actually went into the water to measure the width of the cove at the radius, and from the plat determined roughly where the center line of the cove was and measured from the center line of the cove to the point where Lot 17 and 16 meet and was able to determine that they were within this fifty-foot radius.*" (Emphasis supplied.)

Padrezas testified that the bulkhead was built within the fifty-foot radius of what the Cove was platted at. In making this determination, Padrezas first found the center of the Cove by stretching a line between a point where Lots 18 and 19 met and a point where Lots 14 and 15 meet. Upon stretching a line between those two points, he found the middle of the Cove and from that point measured the fifty-foot radius which he states included all of the bulkhead contiguous to defendants' property. This testimony constitutes some evidence, primitive as it may be, that the bulkheaded area was included within the area dedicated to the public.[1] There was other evidence to the contrary. However, we do not need to consider it since the appellants did not have any insufficient or greater weight of the evidence points of error. Appellants' third point of error is overruled.

Appellants in their fourth point state: "Appellants would show the court that the trial court erred in granting judgment of injunction to appellees because of the language of the alleged dedication giving access by water, appellees admittedly having other access by public streets to each others' property and by the failure to balance the equities of the parties."

█ Appellants' point as above phrased does not comply with the briefing rules as set out in Rule 418, T.R.C.P. We consider the point as being multifarious and too general to comply with the general briefing rules. A point of error is multifarious if it embraces more than one specific ground of error. *Barber v. Corpus Christi Bank & Trust,* 506 S.W.2d 254 (Tex.Civ.App.—Corpus Christi, 1974, no writ); *City of Shamrock v. Hrnciar,* 453 S.W.2d 898 (Tex.Civ. App.—Eastland 1970, writ ref'd n. r. e.); *Johnson-Sampson Construction Co., Inc. v. W & W Waterproofing Co.,* 274 S.W.2d 926 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.).

█ Even though it has long been the policy of this Court to indulge a liberal construction of the briefing rules and to give effect thereto, we cannot determine with any degree of certainty the nature of this point of error. Appellants restate the points of error 3 and 4 followed by a single section designated "Argument and Authorities". Appellants' entire argument and citation of authorities relate to point of error 3 only. We can find no argument or authorities in support of point of error 4. Although the rules are to be given a liberal construction to the end that a just, fair, equitable and impartial adjudication of the rights of the parties may be obtained, a sufficient compliance with the rules is necessary to justify consideration of the point

---

1. Early surveyors along the Rio Grande River used primitive surveying methods including a "cordel" which was the waxed string or rope 50 varis in length to measure the various portions. See *Strong v. Delhi-Taylor Oil Corporation,* 405 S.W.2d 351 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.).

of error. This has been made mandatory by our Supreme Court. *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887 (1960). See also *Leal v. Aluminum Company of America,* 443 S.W.2d 942 (Tex.Civ.App.—Corpus Christi 1969, no writ); Rule 418, T.R.C.P. Therefore, in light of the appellants' failure to distinctly and separately point out the error complained of and to properly support such complaints by argument and authorities, the point of error (No. 4) cannot be considered by this Court. Rule 418, T.R. C.P. *Barber v. Corpus Christi Bank & Trust,* supra. It is accordingly overruled.

The appellants by their fifth and sixth points of error assert that the trial court erred in granting the injunction because plaintiffs wholly failed to show any peculiar or irreparable damage to themselves and because of the availability of a legal remedy.

■ An injunction is a pure application of equitable relief. One seeking injunctive relief must plead irreparable injury and/or that he has no adequate remedy at law, and/or that irreparable injury is threatened. Plaintiffs satisfactorily allege that they will suffer irreparable damage and injury unless the acts and conduct of defendants complained of are enjoined and that they have no adequate remedy at law.

■ An irreparable injury is an injury of such a nature that the injured party cannot be adequately compensated, or that the damages which result therefrom cannot be measured by any certain pecuniary standard. *Southwestern Chemical & Gas Corporation v. Southeastern Pipe Line Company,* 369 S.W.2d 489 (Tex.Civ.App.—Houston 1963, no writ); *Gulf Oil Corporation v. Walton,* 317 S.W.2d 260 (Tex.Civ.App.—El Paso 1958, no writ); *Wilson v. Whitaker,* 353 S.W.2d 945 (Tex.Civ.App.—Houston 1962, no writ); Lowe & Archer, Injunctions and Extraordinary Proceedings, Sec. 114, p. 157.

■ Pasowicz testified that the erection of the fences was a nuisance in general. He further testified as follows:

"Q  Mr. Pasowicz, you have in your petition here said that you have or will suffer irreparable damage and injury unless these fences are taken down. Now, would you just tell us what irreparable damage and injury you have suffered or will suffer? You have told us that you can walk around on the street way or the edge of the street to visit with friends and neighbors throughout that neighborhood, and will you just tell us in the light of that just what irreparable damage and injury you'll suffer.

A  Two points I'd like to make on that is, number one, I have had access across this property. The second one, I fear injury to a child, mine or others, out there that we can see. Things do occur. We're unable to assist a child if a child should be injured across the channel as mine have, as others probably will be. It is just a hazard out there as far as I'm concerned."

Pasowicz testified that on one occasion, his daughter was injured across the Cove from their home near Lot 19 and to get home, she had to run all the way around the homes on the outside. He stated that his primary fear was that if a child had been hurt over there, he could not get her assistance or she could not get home in due time. Padrezas, the other plaintiff, testified that he, his neighbors and numerous children used the walkway consistently prior to the gates being erected. He testified that at the time of trial, he noticed that children were going around the gates and "like I say, the danger is still there."

The record in this case contains ample evidence to show the irreparable nature of the injury to plaintiffs. Appellants' point of error 5 is overruled.

■ We now come to the question of whether there was an adequate remedy at law other than the granting of the injunction. Appellants assert that where title to land is the basis of the dispute, injunction is not the proper remedy when the legal remedy of trespass to try title is available. *Bruce v. Moore,* 277 S.W.2d 199 (Tex.Civ.

App.—Waco, 1955, no writ); *Fant v. Massie,* 451 S.W.2d 774 (Tex.Civ.App.—Austin 1970, writ ref'd n. r. e.); *Patten v. Quirl,* 447 S.W.2d 470 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.); *McMahon v. Fender,* 350 S.W.2d 239 (Tex.Civ.App.—Waco 1961, writ ref'd n. r. e.). These authorities are not in point. Here, the plaintiffs claimed no title to the disputed tract. The primary issue being only whether the disputed tract was included within the dedicated area. It should also be noted that defendants did not raise the above claim in their pleadings or during trial, but have raised this question for the first time on appeal. The sixth point of error is overruled.

In appellants' points of error 7, 8 and 9, they assert that the granting of the injunction was improper because the use of the disputed area constituted a deviation or misuse of the property in violation of the terms of the dedication, resulting thereby in an abandonment of the disputed area (even if it can be conceded that the area was within the alleged dedication). The dedicatory language provided in part:

"The Tropic Isles Main Channel and the Coves which provide a means of access by water to each of the lots in the addition are hereby dedicated to the public forever."

It is well settled that abandonment of dedicated property occurs where the use for which the property was dedicated becomes impossible of execution, or the object of the use wholly fails. In general, misuse does not constitute abandonment unless the dedicated use becomes impossible. *Adams v. Rowles,* 149 Tex. 52, 228 S.W.2d 849 (1950); *Compton v. Thacker,* 474 S.W.2d 570 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.). Here, the appellants failed to raise by either their pleadings or the evidence the facts of misuse or deviation sufficient to constitute an abandonment. There was no showing by appellants that the use for which the property was dedicated, i. e., to provide a means of access of water to each of the lots, became impossible. Therefore, appellants' points of error 7, 8 and 9 are overruled.

The judgment of the trial court is AFFIRMED.