Edward J. OTTIS et ux., Appellants,

v.

Charles F. HAAS, Appellee.

No. 1297.

Court of Civil Appeals of Texas, Corpus Christi.

June 15, 1978.

Rehearing Denied Aug. 29, 1978.

Larkin T. Thedford, Edna, for appellants.

Richard B. Collins, Duckett, Bouligny & Collins, El Campo, William J. Tucker, Wood, Boykin & Wolter, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a directed verdict case. Plaintiffs, Edward J. Ottis and wife, Jane, are surface owners of a tract of land that is subject to an oil and gas lease. They brought suit against the lessee, Charles F. Haas, seeking an injunction to prohibit the defendant from installing a set of tank batteries upon plaintiffs' land and in the alternative, damages to their land caused by the particular location of the tank batteries. At the close of the plaintiffs' case in chief the trial court granted defendant's motion for instructed verdict. Plaintiffs perfected their appeal to this Court.

Plaintiffs purchased a fee simple interest in the surface only of a 13.48 acre tract of land in Jackson County, Texas, out of a larger tract of land owned by the grantors,

J. L. and Martha Kopecky. The deed dated February 14, 1975, evidencing the transaction reserved unto the Kopeckys the mineral estate in the 13.48 tract and all executory rights incident thereto.

On April 28, 1975, the Kopeckys and the defendant lessee entered into an oil and gas lease which encompassed 60 acres of land, including the 13.48 acre tract owned by plaintiffs. The lease in question contains a provision prohibiting the lessee from drilling a well within "two hundred (200) ft. of any residence or barn now on said land without lessor's consent." After the signing of the lease, plaintiffs commenced building a brick home on their land. During the time plaintiffs' home was in the process of construction, the defendant lessee commenced drilling operations. The lessee completed a well approximately 312 feet north of plaintiffs' homesite, and placed the tank batteries in question approximately 50 feet further to the north of the well.

Plaintiffs instituted this suit seeking to enjoin the defendant from locating the tank batteries on plaintiffs' land because such location, in close proximity to plaintiffs' home, constituted a nuisance and unreasonable danger, and because there was no adequate remedy at law. In the alternative, plaintiffs prayed for damages representing the decrease in market value of their land caused by the location of the tank batteries. The plaintiffs contend that the basis for their damages is the provision contained in the reservation clause of their warranty deed.[1] In support of this claim, plaintiffs alleged that the deed had been recorded prior to the execution of the oil and gas lease and, therefore, defendant lessee was charged by law with knowledge of this damage clause.

---

1. The reservation provision of the deed containing the general damage clause in question provides as follows:

 "SAVE AND EXCEPT the Grantors reserve to themselves, their heirs and assigns all of the oil, gas and other minerals together with all leasing rights for a period of twenty (20) years from date hereof and until production ceases should production be had on the premises or lands pooled therewith at the end of the 20 year period. The Grantees to be paid for all surface damages or any other type of damage that might arise or be caused to surface of property by reason of this provision."

The lessee filed a general denial and alleged that his liability for damages, if any, should be governed by the damage clause contained in the oil and gas lease [2] and not the damage clause contained in the deed. On the day of trial, the trial court granted lessee's motion in limine to the effect that plaintiffs should refrain from mentioning during trial the general damage clause contained in the deed on the basis that such damage clause, as a matter of law, constituted a personal covenant which bound only the plaintiffs' grantors, the Kopeckys, who were not parties to the present suit.

Plaintiffs' evidence included the testimony of one expert witness who testified to the effect that the general practice of the oil and gas industry in Jackson County, Texas, was to locate tank batteries at a distance of not less than 1200 feet from residential dwellings; that, in his opinion, the location of the tank batteries in question was dangerous; that relocating the tank batteries to the west edge of plaintiffs' land behind a particular barn would not affect the production of the well; and that the cost of such relocation would be approximately $2,500.00.

At the close of plaintiffs' evidence, the defendant presented his motion for instructed verdict. Defendant's motion, in essence, was predicated upon the following two general grounds: 1) that plaintiffs failed to plead or prove a viable theory of recovery against defendant because defendant's obligations were governed solely by the general damage clause contained in the oil and gas lease and plaintiffs had failed to plead or prove a breach of said lease provision or a violation of any other duty by the defendant; and 2) that plaintiffs had failed to plead or prove any specific elements of recoverable damages under the damage clause of the lease provision or under any

other possible theory of recovery. After hearing the arguments of counsel, the trial court granted defendant's motion.

■ Plaintiffs present three general points of error on appeal complaining of the trial court's action in granting defendant's motion for instructed verdict. The major difficulty presented in this appeal is that plaintiffs have made multifarious, general arguments in support of more than one theory of recovery under each general point of error. Many of these arguments have not been briefed and many relate to alleged errors committed by the trial court which have not been preserved for appellate review. Consistent with our general·policy of liberally construing the briefing rules in order to give every possible effect thereto, we construe each point of error in light of our understanding of appellants' arguments and the authorities contained thereunder. See our local rules relative to "Briefs" in *Continental Oil Co. v. Dobie*, 552 S.W.2d 183, 187 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.) and Rules 414–422, T.R.C.P. We cannot consider some of plaintiffs' general arguments in spite of our liberal briefing policy because they do not relate to any specific point of error.

First, we consider plaintiffs' main argument throughout their brief concerning the relationship of the damage clause contained in the deed to their present claims against the defendant lessee. Plaintiffs' theory at trial was that the general damage clause contained in the warranty deed is a covenant running with the land which obligated the lessee to compensate the plaintiffs for all damages caused to the surface estate, including the alleged decrease in market value of plaintiffs' 13.48 acre tract of land, notwithstanding a more restrictive damage clause contained in the oil and gas lease. Lessee's theory, on the other hand, was that

---

2. The damage clause contained in the lease provides as follows:

"Lessee agrees that within ninety (90) days after drilling or re-working operations are completed on each well, to level all dumps, fill all pits not being used in Lessee's operations, remove all debris and put the surface of the land in substantially the same condition as it was

prior to the commencement of such operations. Lessee further agrees to pay surface owner or surface owner's tenant thereon, as their interest may appear, for actual damages to grasses, growing crops, livestock, water wells, tanks, reservoirs or other improvements situated on the leased premises, resulting from Lessee's operations hereunder . . . ."

the damage clause contained in the deed was, at most, a personal covenant between the plaintiffs and the plaintiffs' grantors, the Kopeckys, and that, since the grantors were not made parties to the suit, any evidence concerning the damage clause contained in the deed should not be admitted. The trial court, agreeing with lessee's position, granted lessee's motion in limine (which precluded plaintiffs from introducing that particular portion of the warranty deed into evidence), and prohibited any testimony offered concerning the damage clause contained therein. Plaintiffs, however, offered into evidence the deed with the damage clause and objected to the trial court's adverse ruling. On appeal, plaintiffs apparently contend that the general damage clause contained in the deed controls plaintiffs' cause of action against the lessee. However, the plaintiffs failed to bring forward a point of error complaining of the trial court's action in granting defendant's motion in limine and in refusing to allow the particular clause of the deed to be introduced into evidence.

■ It is not reversible error for a trial court to sustain a motion in limine which requires a party to notify the court and advise counsel out of the presence of the jury of his intention to offer certain evidence, so as to permit counsel to make his objection if he wishes in the jury's absence. Before a party can correctly claim error, he must thereafter offer his evidence, secure an adverse ruling from the court, and make a proper bill of exception. *Hartford Accident and Indemnity Company v. McCardell*, 369 S.W.2d 331, 335 (Tex.Sup. 1963); *City of Corpus Christi v. Nemec*, 404 S.W.2d 834, 836 (Tex.Civ.App.—Corpus Christi 1966, no writ). While it is true that, in this case, plaintiffs objected to the exclusion of the damage clause of the deed, plaintiffs' brief contains no assignments of error and no arguments and authority under any other assignment of error before this Court that the trial court improperly excluded such portion of the deed. Therefore, plaintiffs have waived their right to complain of this ruling. *Lout v. Whitehead*, 415 S.W.2d 403, 407 (Tex.Sup. 1967); *Talbott v. Hogg*, 298

S.W.2d 883 (Tex.Civ.App.—Amarillo 1957, writ dism'd). See also, *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, 540 S.W.2d 380, 389 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), cert. denied, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *Inman v. Padrezas*, 540 S.W.2d 789, 797 (Tex. Civ.App.—Corpus Christi 1976, no writ); *Whitson Company, Inc. v. Bluff Creek Oil Company*, 278 S.W.2d 339, 347 (Tex.Civ. App.—Fort Worth 1955, aff'd, 156 Tex. 139, 293 S.W.2d 488 (1956). The scope of our review of plaintiffs' points of error will not include consideration of plaintiffs' other general arguments relating to the damage clause contained in the deed. The materiality of these arguments was conditioned upon the admissibility of the deed's damage clause into evidence. This clause is not properly preserved in the record. Therefore, we have no basis upon which to determine whether it was properly excluded. See Rules 434 and 503, Texas Rules of Civil Procedure and authorities cited thereunder.

■ Having determined the proper scope of our review, we now consider the merits of plaintiffs' three specific points of error, keeping in mind the familiar rules governing a review of instructed verdict cases. An instructed verdict is proper only under limited circumstances which are: 1) that a defect (specifically indicated) in the opponent's pleading makes it insufficient to support a judgment; 2) that the evidence proves conclusively the truth of fact propositions which, under the substantive law, establish the right of the movant, or negative the right of his opponent, to judgment; or 3) that the evidence is insufficient to raise an issue of fact as to one or more fact propositions which must be established for the opponent to be entitled to judgment. *Newitt v. Camden Drilling Co.*, 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, no writ); McDonald, Texas Civil Practice § 11.28.1 (1970).

In point of error number one, plaintiffs assert that the trial court erred in granting an instructed verdict by not allowing the jury to answer fact issues that would en-

title plaintiffs to injunctive relief pertaining to the location of the tank batteries. As we understand this point of error based on the argument and authorities contained in plaintiffs' brief, plaintiffs' theory is that the location of defendant's tank batteries constitute an unreasonable use of plaintiffs' surface estate and therefore the defendant should be enjoined from its use. Plaintiffs argue that the "rule of reasonable accommodation" mandates that defendant lessee should be required to relocate the storage tanks in question.

In Texas an oil and gas estate is the dominant estate in the sense that the lessee is impliedly authorized to use as much of the premises as is reasonably necessary to produce and remove the minerals authorized by the lease. *Getty Oil Company v. Jones,* 470 S.W.2d 618, 621 (Tex.Sup. 1971), and authorities cited therein. It is also generally recognized in Texas that the mineral lessee may select any portion of the surface estate covered under the oil and gas lease as a place for his well, subject to whatever restrictions there may be in the lease itself. *Gulf Oil Corporation v. Marathon Oil Co.,* 137 Tex. 59, 152 S.W.2d 711, 724 (1941); *Hoffman v. Magnolia Petroleum Co.,* 260 S.W. 950, 952 (Tex.Civ.App.— San Antonio 1924), rev'd on other grounds, 273 S.W. 828 (Tex.Comm'n App. 1925, holding approved); *Felmont Oil Corp. v. Pan American Petroleum Corp.,* 334 S.W.2d 449, 456 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.); cf. *O'Neil v. Sun Co.,* 58 Tex.Civ. App. 167, 123 S.W. 172, 173–74 (1909, error ref'd); 42 Tex.Jur.2d § 209 (1963); Keeton and Jones, Jr., Tort Liability and the Oil and Gas Industry, 35 Texas L.Rev. 1, 4 (1956); Browder, The Dominant Oil and Gas Estate—Master or Servant of the Servient Estate, 17 S.W.L.J. 25, 33 (1963); *Grimes v. Goodman Drilling Co.,* 216 S.W. 202 (Tex.Civ.App.—Fort Worth 1919, error dism'd). The lessee is also entitled to use so much of the land immediately surrounding the well as is reasonably necessary for his operations including the installations of tanks and other surface equipment. *Brown v. Lundell,* 162 Tex. 84, 344 S.W.2d 863, 866–67 (1961). These rights, however, are to be exercised with due regard to the rights of the owner or owners of the servient estate. *Getty Oil Company v. Jones,* supra and authorities cited therein.

In this case, the lease itself contained a general purpose clause [3] which impliedly allows the lessee to use so much of the surface as reasonably necessary to fulfill the purposes of the lease, subject, of course, to the express condition, "that no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent." It is undisputed that the well in question was not drilled within 200 feet from the plaintiffs' residence, and that the tank batteries in question were located an additional 50 feet further away from plaintiffs' residence. The undisputed evidence established that the defendant lessee used approximately 3.5 acres of plaintiffs' surface estate in completing the initial drilling operations and that this amount was reduced to .46 of an acre for production purposes. Plaintiffs do not contend here that the lessee utilized more of the surface estate than was reasonably necessary to accomplish the drilling and production operations and admit that tank batteries were a necessary incident of oil and gas production. Nevertheless, plaintiffs apparently contend that the location of the storage tanks constituted an unreasonable use of the surface estate which substantially impairs plaintiffs' use of the surface estate.

Plaintiffs rely principally upon the case of *Getty Oil Company v. Jones,* 470 S.W.2d 618 (Tex.Sup. 1971). We do not agree that plaintiffs' pleadings and evidence have raised the "rule of reasonable

---

**3.** This clause provided, in relevant part, as follows: ". . . hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building roads, *tanks,* power stations, telephone lines and other structures thereon and on, over and across [the surface estate] to produce, save, take care of, treat, transport and own said products . . . ." (Emphasis added).

accommodation" as applied by the Supreme Court in the *Jones* case. In the *Jones* case, a dispute arose between surface owner and the oil and gas lessee over rights to exclusive use of air space above the surface area occupied by oil pumping units required for the protection of the minerals. Our Supreme Court was faced with seemingly irreconcilable positions regarding the use of the surface and air space above because the surface owner was unable to operate his automatic irrigation sprinkler system and, therefore, unable to fully utilize his surface rights because of obstacles in the form of the lessee's existing pumping units. In our case, plaintiffs have not raised by evidence a single issue of fact pertaining to conflicting uses of the surface estate. Plaintiffs have failed to show that the location of the tank batteries in question materially interferes with their use of the surface estate. The tank batteries are located on land that plaintiffs used only for grazing purposes. The tank batteries were completely enclosed by a fence. In addition, plaintiffs have failed to show that the location of the tank batteries materially interfered with their use of the surface estate as a residence. Inconvenience to the plaintiffs is not a controlling factor. The burden was on the plaintiffs to demonstrate by some competent evidence that "under all circumstances the use of the surface by [the lessee] in the manner under attack is not reasonably necessary." See *Jones*, supra, at p. 623.

Here, plaintiffs sought to discharge this burden by showing that the tank batteries could be relocated without substantially interfering with the production of oil under the lease and at a minimal cost. It was undisputed that relocation of the tank batteries would require additional use of the surface estate due to additional pipe lines and an additional access road. There must appear to be more than a question of inconvenience to the surface owner to invoke the rule of "reasonable accommodation". See *Jones*, supra, at p. 628.

■ Plaintiffs' pleadings raised generally an issue of whether the location of the tank batteries in question constituted a nuisance which would entitle the plaintiffs to injunctive relief. Such an issue has not been preserved on appeal by a proper point of error or supported by arguments and authorities contained in the brief. Therefore, any complaint concerning this issue has been waived.

■ Next, we consider plaintiffs' points of error concerning the verdict in defendant's favor on plaintiffs' claims for damages. Absent an express or implied lease provision obligating the lessee to restore the surface, a person who seeks to recover from the lessee for damages to the surface has the burden of alleging and proving either specific acts of negligence *or* that more land was used by the lessee than was reasonably necessary. *Humble Oil & Refining Company v. Williams*, 420 S.W.2d 133, 134 (Tex.Sup. 1967); *Warren Petroleum Corporation v. Monzingo*, 157 Tex. 479, 304 S.W.2d 362, 363 (1957). Where the lease contains an express restoration clause or one is supplied by necessary implication, pleadings and proof of negligence are unnecessary because recovery would be predicated upon the contract. *Warren Petroleum Corporation v. Monzingo*, supra.

Plaintiffs generally complain that the trial court erred in granting an instructed verdict by not allowing the jury to answer fact issues concerning plaintiffs' claim for damage predicated upon negligence and/or unreasonable use of the surface estate. Plaintiffs argue only the negligence theory. We will, therefore, consider this point of error as complaining of the trial court's failure to submit negligence issues to the jury.

Plaintiffs failed to plead a cause of action based upon negligence. On appeal, however, plaintiffs contend that negligence issues should have been submitted to the jury because the following evidence was admitted at trial: 1) that a salt water leak developed in defendant's equipment which damaged plaintiffs' pasture; 2) that defendant failed to properly level the surface after completing drilling operations and caused substantial water to be retained during

rains; 3) that defendant allowed mud to accumulate dangerously close to plaintiffs' residence; 4) that defendant failed to place firewalls around the tank batteries; and 5) that defendant installed used pipe in a portion of the equipment installation.

 Actually, some of these alleged negligent acts are probably related to the lessee's express lease obligation to restore the leased premises, whereby the plaintiffs would have a contractual basis for recovery from the defendant lessee. To be entitled to recovery under either a contract or tort theory, however, the burden was on the plaintiffs to prove up the amount of damages they suffered. This they failed to do. The trial court excluded plaintiffs' proffered testimony concerning the estimated damages caused to the surface estate caused by defendant's lease operations. Plaintiffs then failed to preserve the substance of this testimony by a formal bill of exception or by testimony elicited outside of the presence of the jury and transcribed into the record. In addition, plaintiffs have failed to complain on appeal, by point of error or by arguments and authority, that the trial court erred in excluding this evidence. Without evidence concerning actual damages plaintiffs might have suffered, there is no basis upon which to support the submission of damage issues, either on a breach of contract theory or tort theory. There was no basis upon which to award a judgment for damages in favor of plaintiffs even if all of the issues were submitted except the damage issues.

 The only evidence in the record that plaintiffs suffered monetary damage is testimony that the location of the tank batteries in question decreased the market value of plaintiffs' entire tract by some $20,000 to $25,000. This reduction of the market value is alleged by the plaintiffs to be caused solely by the location per se of the tank batteries in question. Plaintiffs did not contend at the trial level nor do they contend here that any of the above mentioned acts caused this market value reduction. It is proper, as a general rule, for the trial court to direct a verdict where there is no evidence to support a material fact issue. *Newitt v. Camden Drilling Co.*, 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, no writ); McDonald, Texas Civil Practice, § 11.28.1 (1970).

 In point of error number three, plaintiffs assert that the trial court erred in not allowing the jury to determine the reasonable cash market value of plaintiffs' 13.-48 acre tract immediately prior to and after the installation of the tank batteries in question. Under this point of error, plaintiffs cite no authorities and present only a general argument. A point of error that is not briefed does not meet the minimum requirements of Rule 418, Texas Rules of Civil Procedure, and is considered to be waived. *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, supra; *Inman v. Padrezas*, supra; *Whitson Company, Inc., v. Bluff Creek Oil Company*, supra. The gist of this argument, as we understand it, is that the damage clause contained in the deed obligates lessee to compensate plaintiffs for any damages caused to the plaintiffs' surface estate by lessee's drilling operations. As we have previously determined, there is no basis upon which we can review this contention.

Plaintiffs also make some general arguments that lessee had previously orally agreed to place the tank batteries in question on the land of plaintiffs' grantors. If plaintiffs are attempting to establish either an oral contract between the plaintiffs and the defendant or an oral modification of the lease between the defendant and plaintiffs' grantors, as it pertains to plaintiffs' tract of land, there are no pleadings, admissible evidence, or points of error on appeal to support this contention. Plaintiffs' points of error are overruled.

Judgment of the trial court is AFFIRMED.