Melvin C. MENKING, et al., Appellants,

v.

TAR HEEL ENERGY CORPORATION, et al., Appellees.

No. 1745.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 20, 1981.

Marion J. Borchers, Borchers & Taylor, New Braunfels, for appellants.

Denver E. Perkins, Perkins, Dreyer & Rather, Gonzales, Elizabeth Harris, Houston, Phillips Petroleum Co., for appellees.

OPINION

NYE, Chief Justice.

Melvin C. Menking, Janice Menking, Shelby Baker and Beulah McGill (plaintiffs) filed suit against Henry B. Kelsey, James P.

S. Griffith, Fay W. Griffith, Phillips Petroleum Co., Tar Heel Energy Corporation, Geological Research Corporation and American Petrofina Company of Texas (all called defendants hereinafter) for damages for defendants' failure to drill an offset well under an oil, gas and mineral lease. Defendants answered by way of general denial and sought an extension of the primary term of the lease. After a trial to the court, judgment was rendered in which the trial court decreed that the defendants were not in breach of any obligation under the lease, declared the lease terminated and denied the extension of the primary term of the lease. Plaintiffs and defendants have perfected separate appeals, which we treat in separate opinions handed down this day.

A review of the interests of the parties to the oil, gas and mineral lease is as follows: Shelby Baker, lessor, and Geological Research, lessee, entered into a lease agreement effective June 26, 1974. This lease was for a primary term of five years, and for so long thereafter as oil, gas and other minerals were produced from the land. After the lease was in effect, Shelby Baker conveyed a portion of the land to his daughter and son-in-law, Janice and Melvin C. Menking. The Menkings ratified the lease and adopted the terms in October, 1975. By various transfers of title, the original lessee, Geological Research, assigned, transferred and conveyed part of its right, title and interest in said lease to the other defendants named in the suit. Beulah McGill, the former wife of Shelby Baker, owns an undivided (1/32) royalty interest in the land.

In September, 1975, defendants started preparatory operations for the drilling of a well on plaintiff Menkings' land. Melvin Menking, upon discovering these preparations, went to the drill site to talk with the company representative about the location being too close to his hens. Mr. Menking informed the construction company representative that, "nobody is going to do anything until we have an understanding about those hens up there . . . I am going to lock the gate and you-all are not going back by the henhouse until we have an understanding." Mr. Menking then went into the town of Gonzales and contacted the principal owner of Geological Research. The parties purportedly reached an agreement about a damage clause provision for his hens. The record reflects that after this confrontation, defendants decided not to drill on plaintiffs' land because of the problem with plaintiff Menking's hens. Instead, defendants drilled a well on the adjoining "Burns" tract of land. This well was completed on October 13, 1976, and was within 200 feet of plaintiffs' lease lines.

In the Spring of 1978, two well locations were staked on the premises; one being on plaintiff Baker's land and the other being on plaintiffs Menkings' land. All delay rental payments had been timely made by defendants and accepted by plaintiffs. In May, 1978, defendants tendered the delay rental check; however, plaintiffs rejected this payment in June, 1978, and repudiated the lease. On July 13, 1978, plaintiffs filed the present lawsuit seeking to compel defendants to drill an offset well and for drainage damage.

Plaintiffs' only point of error on appeal is that the trial court's finding that plaintiffs were not entitled to any recovery for damages arising from the failure of defendants to drill an offset well so as to prevent drainage was against the great weight and preponderance of the evidence. The pertinent provision of the lease regarding offset wells was as follows:

"In the event of a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within three hundred thirty (330) feet of and draining the leased premises, or acreage pooled therewith, lessee agrees to drill such offset wells as a *reasonably prudent operator* would drill under the same or similar circumstances." (Emphasis added).

It is undisputed that the Burns Well was drilled within the 330 foot limitation set out by the lease and there was considerable evidence that there was some drainage. Therefore, the only question before the trial court was whether a reasonably prudent

operator would have drilled an offset well under the same or similar circumstances. Plaintiffs did not request any specific findings of fact or conclusions of law and none were filed, other than those stated in the judgment.

When this Court rules on a great weight and preponderance of the evidence point of error, we must consider and weigh all of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The record reflects that, based on the Railroad Commission report of 1977, there were 1000 barrels of recoverable oil per acre, and in 1979, there were 750 barrels of recoverable oil per acre. Plaintiffs' expert witness, a Mr. George, testified that he had made several sensitivity studies of the area. These studies presented a spectrum of possible drainage which ranged from 160 acres to 1.8 acres. Mr. George was of the opinion that the Burns Well was draining an 80-acre area, 66.1% of this acreage falling across plaintiffs' lease lines. Such a drainage pattern caused 10,795 barrels of oil to be drained from plaintiffs' land. This oil sold for an average price of $11.16 per barrel or a total dollar damage amount of $15,059.02.

As to whether or not a well on plaintiffs' land would be "commercial," i. e., would have produced in paying quantities, George testified that he thought it would be; however, he admitted that the Burns Well was not a "commercial" well. Mr. George testified that, in his opinion, a reasonable operator would have drilled an offset well on plaintiff's land. On cross-examination, George stated that the approximate cost of drilling and operating a well such as the Burns Well or an offset well would be $415,500.00, and that the maximum production that a well drilled on the Menking land could produce in dollars was estimated to be $362,000.00.

Mr. Behrman, a consultant and vice-president for Geological Research, testified that the total "out-of-pocket" expenses incurred in drilling and operating the Burns Well were $1,693,718.00. He stated that the total production from this well was approximately 16,354 barrels, which produced a total revenue of approximately $181,878.67. Behrman said that, "there was very little scientific data available on this particular field." However, he estimated that, based on his studies, there was drainage of only approximately 2.8 acres from plaintiff's land. Therefore, it was possible that the produced oil came only from the Burns tract.

Specific findings of fact and conclusions of law were neither requested nor filed. Absent such findings, the trial court's judgment implies all necessary fact findings that have evidence to support them. *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1978); *Inman v. Padrezas*, 540 S.W.2d 789 (Tex.Civ. App.—Corpus Christi 1976, no writ); *Johnson v. Buck*, 540 S.W.2d 393 (Tex.Civ.App.— Corpus Christi 1976, writ ref'd n. r. e.). In the present case, the trial court impliedly found that a reasonably prudent operator would not have drilled an offset well under the circumstances.

After carefully reviewing the entire record, we find that there is not only ample evidence to sustain this implied finding, but that such finding is not against the great weight and preponderance of all of the evidence. The plaintiffs' point of error is overruled. This portion of the judgment is affirmed.

Defendants, by way of cross-points, bring forward the identical issues that have been considered and decided by us this day in a separate appeal, *Tar Heel Energy Corporation v. Menking*, 621 S.W.2d 450.

Judgment of the trial court is accordingly affirmed in part and reversed and rendered in part.